LIBERTY MUTUAL INSURANCE COMPANY, Metropolitan Property and Casualty Insurance Company, Plaintiffs,

v.

Estrella DIAMANTE A/K/A Thea Javier A/K/A Susan Javier A/K/A Christina Reyes A/K/A Thea Reyes, Jerico Dino A/K/A Jay Dino, Magdalena Dino, Allan Perez, Highlands Medical Clinic, P.C., Mercy Medical Clinic, Inc. P.C., St. Peter's Medical Clinic, P.C., Lomass Management Inc., Blue Eagle Management, Inc., Srey·Eng, Somphea Sin A/K/A Lenny Sin, Sarith Srey, Vimuth Van Vang A/K/A Vanna Yang, Harvey Alford, Amantino Lopes, Corey Cutler, Gerard Palma, Linda Whittemore, Noemi Dominguez, New England Rehabilitation, Inc., Defendants.

No. CIV. A. 97–10744–RCL.

United States District Court,
D. Massachusetts.

June 14, 2000.

Alexander J. Cochis, David O. Brink, Smith & Brink, P.C., Quincy, MA, for Plaintiff.

Paul R. Chomko, Alford & Bertrand, L.L.C., Watertown, MA, Daniel J. Cloherty, Dwyer & Collora, LLP, Boston, MA, William H. Kettlewell, Dwyer & Collora, Boston, MA, Raymond B. Kim, Inman, Steinberg, Nye & Stone, Los Angeles, CA, John T. Landry, Braintree, MA, Donald B. Marks, Marks & Brooklier, Los Angeles, CA, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford,· Boston, MA, Michael Garvey Scott, Conn, Kavanaugh, Rosenthal, Peisch & Ford, L.L.P., Boston, MA, Elliot M. Weinstein, Boston, MA, for Defendants.

George F. Gormley, Gormley & Colucci, P.C., Boston, MA.

Peter C. Horstmann, Bailey, Fishman & Leonard, Boston, MA.

Peter B. Krupp, Lurie & Krupp, LLP, Boston, MA.

Paul G. Levenson, United States Attorney's Office, Boston, MA.

Daniel J. O'Connell, III, O'Connell & Pollenz, Boston, Ma.

Austin Vorasane, Lowell, Pro Se.

James H. Budreau, Oteri Weinberg & Lawson, Boston, MA, Pro Se.

Michael F. Farrington, Quincy, MA, Pro Se.

Valarie S. Carter, Ronan, Riley & Dever, P.C., Lynnfield, MA.

Linda Whittemore, Waltham, Pro Se.

Robert Wolkon, Wolkon & Pascucci, LLP, Boston, MA.

*FINAL ORDER ON NON–PARTY JAMES PARRILLA'S EMERGENCY MOTION TO QUASH THIRD PARTY SUBPOENAS AND REQUEST FOR SANCTIONS (# 502)*

COLLINGS, Chief United States Magistrate Judge.

### INTRODUCTION

Rule 45(c)(1), Fed.R.Civ.P., provides that:

A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

James Parrilla, a non-party to this litigation, is the husband of Maria Parrilla, also a non-party, who was employed as an office manager for a named defendant, one Corey Cutler, Esquire. James Parrilla seeks an award of $3240 in attorney's fees on the ground that plaintiffs' attorney breached the duty imposed by Rule 45(c)(1), Fed.R.Civ.P., by issuing subpoenas to him, his credit union and his mortgagor.[1] I find that his request has merit for the reasons which follow.[2]

### THE FACTS LEADING UP TO THE SUBPOENA TO JAMES PARRILLA

Maria Parrilla appeared for a deposition on June 17, 1998; in response to questions, she asserted, *inter alia*, her Fifth Amendment rights and refused to answer most of the questions posed. Evidently, Corey Cutler, Esquire,[3] was also deposed at or about the same time and responded by invoking his Fifth Amendment rights. In 1999, Cutler changed his mind and stated that he would answer questions and not invoke any privilege not to answer. When that fact was communicated to plaintiffs' counsel by Cutler's attorney, plaintiffs' counsel asked if that were also true of Maria Parrilla. Cutler's attorney stated that he could not say since he did not represent Ms. Parrilla and she no longer worked for Mr. Cutler.

Plaintiffs' attorney then contacted the firm of Rosenberg, Libby which had represented Ms. Parrilla in 1998. On February 16, 2000, Donald H. Libbey, Esquire, of that firm, wrote to plaintiffs' attorney stating that the firm no longer represented Ms. Parrilla. Attorney Libbey ended his letter with the statement that "If after you subpoena [Ms. Parrilla], she contacts our office and/or then asks us to represent her at her deposition, I will notify you immediately." (# 534, Exh. A)

Thereafter, subpoenas were served on Ms. Parrilla at her last known place of employment. She failed to appear on January 6, 2000 for the deposition. A subpoena was then served at her residence at 73 Rowe Street, Roslindale. She again failed to appear on February 22, 2000 for the deposition. Thereafter, on March 3, 2000, a deposition notice was issued to 73 Rowe Street commanding Ms. Parrilla's attendance at a deposition on March 21, 2000.

On March 9, 2000, Julie Kfoury, an investigator for Liberty Mutual, went to 73 Rowe Street in order to locate Ms. Parrilla. When she arrived at 73 Rowe Street, she observed a vehicle in the driveway which she knew to be registered to James and Maria Parrilla. When she rang the doorbell, a man answered and said Ms. Parrilla was at work and gave Ms. Kfoury her telephone number at work. The number was the number at Cutler's office. Ms. Kfoury gave the man "...a copy of Maria Parrilla's previously served subpoena, and asked that he make certain that Maria Parrilla received it."[4] (# 535, ¶ 6)

---

1. Plaintiffs did not file an opposition to the request for sanctions within the time provided by Local Rule 7.1(B)(2). This is an independent ground for granting the request.

2. The facts are taken from pleadings 534, 535 and 536.

3. Hereinafter, "Cutler."

4. I assume that whatever Ms. Kfoury gave to the man reiterated the fact that Ms. Parrilla had to appear for a deposition on March 21st. From plaintiffs' attorney's affidavit, it is unclear wheth-

Ms. Parrilla did not appear on March 21st. On March 29th, plaintiffs' counsel spoke with one Steven Rosenberg of the law firm of Rosenberg, Libbey who said that he had spoken to Ms. Parrilla "several weeks earlier [and][a]t that time she told him that she had been subpoenaed." (# 534, ¶ 13)

## THE SUBPOENAS ISSUED ON MARCH 29, 2000

On March 29th, plaintiffs' counsel knew that Ms. Parrilla had been served with one or more subpoenas and had not complied with those subpoenas. It was at this juncture that plaintiffs' counsel issued subpoenas to James Parrilla commanding him to appear for a deposition and to produce his federal tax returns from 1994 to the present and all records relating to any account used by him and his wife from 1994 to the present. On the same day plaintiffs' counsel issued a subpoena to RTN Federal Credit Union in Waltham commanding it to produce copies of all loan applications involving either Mr. or Ms. Parrilla or both. On April 3, 2000, plaintiffs' attorney issued a subpoena to Mr. Parrilla's mortgage company in Jacksonville, Florida commanding it to produce all documents relating to any loan applications involving Mr. or Ms. Parrilla or both.

## EVENTS OCCURRING AFTER THE SUBPOENAS TO MR. PARRILLA

At some point between the issuance of the subpoenas on March 29th and April 10th, the Parrillas retained Attorney Robert Wolkon of the law firm of Wolkon & Pascucci. On April 10th, Attorney Wolkon spoke with plaintiffs' counsel. Attorney Wolkon has filed an affidavit (# 536) detailing the content of that conversation. Plaintiffs' attorney's affidavit neither acknowledges nor denies that the conversation took place. In view of the failure of plaintiffs' counsel to contradict the fact of the conversation or its contents as recited by Attorney Wolkon, I accept the facts recited in Attorney Wolkon's affidavit as true.

Attorney Wolkon avers the following with respect to the April 10th conversation with plaintiffs' counsel, David O. Brink, Esquire:

I began the telephone conversation by advising Mr. Brink that James Parrilla had absolutely no connection with this case, and had no relevant knowledge regarding the parties, facts, or legal issues in the case. Mr. Brink responded by stating "I need to get Maria in here. I don't have any need for Jimmy if you will get Maria in the chair for me. If you get Maria in here, I'll release Jimmy." Mr. Brink and [sic] further stated that he had been trying to subpoena Maria Parrilla, but that she had been ignoring his subpoenas. He told me "the reason I subpoenaed Jimmy and all of his bank records was to get Maria to pay attention to my subpoenas. This got her to pay attention." I informed Mr. Brink that I considered his purposes in issuing a subpoena to Mr. Parrilla solely to pressure his wife into testifying to be entirely improper, and that there were other appropriate procedures to compel Mrs. Parrilla's testimony. Once again, Mr. Brink stated that if I would arrange for Mrs. Parrilla to testify at a deposition, he would not depose Mr. Parrilla.

# 536, ¶ 10.

On April 11th, Mr. Wolkon filed Non–Party James Parrilla's Emergency Motion to Quash Third–Party Subpoenas and Request for Sanctions (# 502). On May 5th, plaintiffs' counsel wrote a letter to Mr. Wolkon stating that the plaintiffs were withdrawing their deposition subpoena of Mr. Parrilla. (# 534, Exh. B). Presumably, this was part of an ongoing negotiation to secure Ms. Parrilla's testimony. On May 5th, Attorney Wolkon informed plaintiffs' attorney that Ms. Parrilla would not invoke her Fifth Amendment privilege and would testify.

---

er a new subpoena was issued on March 3rd commanding an appearance on March 21st or whether a new notice was served on March 3rd informing Ms. Parrilla that she had to appear on March 21st in accordance with the subpoena served on February 18, 2000. Plaintiffs' attorney's affidavit notes that on February 18th, "another deposition and subpoena" were served (# 534, ¶ 10) and that on March 3rd, "another deposition notice was issued ..." (# 534, ¶ 12).

## DISCUSSION

Plaintiffs' attorney states that:

...[A]ll of the subpoenas [to Mr. Parrilla] were issued in good faith. To this day, plaintiffs do not know where Maria Parrilla's [sic] works. Maria Parrilla's current whereabouts and employment status were appropriate and ethical areas of inquiry made necessary because of the conduct of Maria Parrilla when she intentionally ignored Court Orders to appear for her deposition.

# 534, ¶ 33.[5]

The question is not whether the subpoenas were issued in "good faith." Rather, the issue is whether issuance of the subpoenas violated the duty imposed by Rule 45(c)(1), Fed.R.Civ.P. A subpoena may be issued in "good faith" but still may be improper if the party serving the subpoena has failed to "take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena." Rule 45(c)(1), Fed.R.Civ.P. That is precisely the duty which plaintiffs' attorney breached in issuing the subpoenas to Mr. Parrilla, his credit union and his mortgagor. Just because he is married to Ms. Parrilla does not exempt Mr. Parrilla from the protections of the rule. Nor does the fact that Ms. Parrilla wilfully disobeyed the subpoenas mean that Mr. Parrilla has any complicity in the contumacious conduct.

So what should plaintiffs' attorney have done? Simply stated, he should have targeted his fire on the deponent who had failed to comply with the subpoenas, i.e., Ms. Parrilla, rather than her husband. He should have availed himself of the very procedures set forth in the Federal Rules for dealing with a non-party who fails to comply with a subpoena and taken the "reasonable step" of seeking a warrant for Ms. Parrilla's arrest for contempt of Court pursuant to Rule 45(e), Fed.R.Civ.P. I rule that such a step is a "reasonable" one which must be taken prior to issuing subpoenas to other third parties who have no connection with the case. Perhaps if the warrant is unable to be served

after a reasonable time, some discovery as to the witness' whereabouts might be in order, but to subpoena another third party before taking this step is unreasonable under Rule 45(c)(1), Fed.R.Civ.P. Lastly, in the circumstances of this case, the additional subpoenas to Mr. Parrilla's mortgagor and credit union were clearly unreasonable and placed an undue burden and undue expense on him.

## CONCLUSION AND ORDER

Accordingly, it is ORDERED that Non–Party James Parrilla's Emergency Motion to Quash Third–Party Subpoenas and Request for Sanctions (# 502), to the extent it requests sanctions, be, and the same hereby is, ALLOWED. David O. Brink, Esquire, is ORDERED, pursuant to Rule 45(c)(1), Fed.R.Civ.P., to pay to James Parrilla, c/o Robert Wolkon, Esquire, the sum of three thousand two hundred forty dollars ($3240.00) as a sanction for violating the duty imposed by Rule 45(c)(1), Fed.R.Civ.P. The sum is to be paid by Attorney Brink and/or the law firm of Smith & Brink, P.C., and neither Attorney Brink nor the law firm shall be reimbursed, either directly or indirectly for the sum, by either or both of the plaintiffs.

---

5. When plaintiffs' attorney used the term "Court Orders," I assume he is referring to the subpoenas. No application was ever made for an Order issued by a judicial officer that Ms. Parrilla appear for a deposition.