**GEORGIA–PACIFIC LLC,**
**et al., Plaintiffs,**

v.

**AMERICAN INTERNATIONAL SPE-
CIALTY LINES INSURANCE
COMPANY, Defendant.**

No. 2:08–cv–950.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 29, 2010.

Order on Subsequent Determination
March 31, 2010.

James Edward Arnold, James G. Vargo, James E. Arnold & Associates Co., LPA, Columbus, OH, Paul C. McCaffrey, Thomas E. Birsic, K&L Gates LLP, Pittsburgh, PA, for Plaintiffs.

James Joseph Brudny, Jr., Reminger & Reminger Co., L.P.A., Columbus, OH, Emily N. Holmes, James J. Berdelle, Lisa J. Smuckler, Mark W. Zimmerman, Clausen Miller, PC, Chicago, IL, for Defendant.

## ORDER

TERENCE P. KEMP, United States Magistrate Judge.

On June 1, 2009, the Court entered separate protective orders pursuant to which E. James Hopple ("Hopple") and The Garden City Group, Inc. ("Garden City Group"), who are not parties to this action, produced certain documents to American International Specialty Lines Insurance Company ("Defendant"). The documents were the subject of subpoenas duces tecum issued on behalf of Defendant. Following service of the subpoenas, Hopple and Garden City Group each moved for a protective order (## 44, 45) on behalf of certain presently unrepresented class members who had submitted proofs of claim for property damages and personal injuries sustained as the result of an explosion and fire that occurred at Georgia–Pacific's Columbus, Ohio facility on September 10, 1997. Those class members who claimed personal injury were required to attach to their claims copies of medical records, invoices, and other documents evidencing proof of personal or bodily injury. The motions sought to protect those class members with respect to the disclosure of any confidential medical records or other health information falling under HIPAA. In addition, Hopple and Garden City Group asked that they be compensated pursuant to Fed.R.Civ.P. 45(c)(1) for their time and expense in review-

ing the electronically stored information and hard copy documents, the preparation of any objections and/or privilege log, as well as reimbursement of their expenses associated with producing the documents, and preparing for, appearing at, and defending a deposition.

Defendant opposed the motions for protective orders and filed a motion to compel production of the documents requested in the subpoenas (# 48). The Court held a status conference on May 19, 2009, and issued an order the following day. The order (# 53) provided in relevant part that the motions for protective order and the motion to compel would be resolved by the entry of a protective order which was to be submitted no later than May 26, 2009.

The protective orders entered by the Court provided that the parties to this action would reimburse Hopple and Garden City Group for their reasonable costs and/or fees in retrieving and producing emails. Left unresolved, however, was the question of whether Hopple and Garden City Group are entitled to recover their attorney's fees in connection with their motions for protective order. The Court ordered the filing of briefs regarding Hopple's and Garden City Group's entitlement to attorney's fees. On June 5, 2009, Hopple and Garden City Group filed a memorandum in support of their request for attorney's fees and expenses associated with their motions for protective order. On June 26, 2009, Defendant filed a memorandum contra this request. Only the legal issue is presently before the Court as neither Hopple nor Garden City Group has submitted a verified statement of the attorney's fees each incurred in connection with their motions for protective orders.

The memoranda submitted by both sides analyzes the movants' entitlement to attorney's fees under Rules 26(c)(1) and 37(a)(4) of the Federal Rules of Civil Procedure. Rule 26(c)(1) allows any person from whom discovery is sought to move for a protective order. Rule 37(a)(5) dictates that if the court grants the motion, it shall require the party whose action brought about the need for a protective order "to pay the movant's reasonable expenses incurred in making

the motion, including attorney's fees." The rule further provides, however, that the court should not order such payment if the movant filed the motion before attempting to resolve the dispute in good faith, if the opposing party's conduct was substantially justified, or if other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(a)(5)(A)(i–iii).

The Court believes that, contrary to the analysis found in the supporting and opposing memoranda, an award of attorney's fees in the present circumstances is more appropriately considered under Rule 45 of the Federal Rules of Civil Procedure, which governs subpoenas. This rule provides in relevant part:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed.R.Civ.P. 45(c)(1). Unlike Rules 26 and 37, which focus on the conduct and motivation of the party requesting discovery, Rule 45 focuses on the burden imposed on the recipient of the subpoena. *See Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679 (N.D.Okla.2008). So long as the duty to avoid imposing an undue burden is violated, it is of no consequence that the party or attorney who served the subpoena acted in good faith. *Id.; see also Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D.Mass. 2000).

Rule 45 further provides that the person commanded to produce documents or electronically stored information may within a specified time period serve an objection on the party or attorney designated in the subpoena. The party or attorney who served the subpoena may then move the issuing court for an order compelling production or inspection. However, any such order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed.R.Civ.P. 45(c)(2)(B).

■ Protection of a non-party from significant expense does not necessarily mean that the party issuing the subpoena must bear the entire cost of compliance. *See In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C.1992). "However, the Advisory Committee's Notes, commentaries, and the small universe of decisions applying the Rule appear to intimate such an interpretation." *In re First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). In fact, the entire tenor of Rule 45 is to prohibit a party from shifting its litigation expenses to a non-party. *Kean v. Van Dyken*, No. 4:05–CV–64, 2006 WL 374502 at *5 (W.D.Mich. Feb. 16, 2006). The relevant factors for determining how much of the production cost the requesting party must bear include "whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." *Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 177 (D.D.C.1998).

There is nothing in the record to indicate that Hopple or Garden City Group has any interest in the outcome of this case. There is also no reason to believe that Hopple and Garden City Group can more readily bear the costs of production than Defendant. Finally, this litigation does not appear to be of public importance. Therefore, the Court concludes that Defendant should bear any significant expenses incurred by these nonparties in complying with the subpoena.

■ A non-party's legal fees, particularly where the services benefit the requesting party, are considered an expense which is reimbursable under Rule 45(c)(2)(B). *First American Corp.*, 184 F.R.D. at 241. *See also Huntair, Inc.*, 254 F.R.D. at 679 (award of attorney's fees may be appropriate sanction for violation of Rule 45). The rationale behind this rule is that "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *In re Automotive Refinishing Paint*, 229 F.R.D. 482, 496–97 (E.D.Pa.2005) (internal quotation marks and citations omitted).

In this case, counsel for Hopple and Garden City Group had a duty to protect class members in the *Booth* class action litigation with respect to the disclosure of any confidential medical records or other health information falling under HIPAA. To comply with Defendant's subpoena, their attorneys had to review some ten bankers' boxes of documents, as well as electronically stored information. Their attorneys then prepared objections and/or privilege logs, exchanged emails with Defendant's counsel regarding those objections, and ultimately filed motions for protective orders when, in their view, the protective order proposed by Defendant did not address all of their concerns.

■ Based on the foregoing reasons, the Court finds that Defendant's subpoenas imposed an undue burden on Hopple and Garden City Group. The Court further determines that they should recover at least a portion of their attorney's fees. The Court directs Hopple and Garden City Group to serve and file a statement of their costs and attorney's fees within fourteen (14) days of the entry of this order. Defendant may thereafter file an objection to the reasonableness of such fees and expenses within fourteen (14) days of the filing of such fee statement. The Court may schedule a hearing on any objections if deemed necessary to resolve this dispute. It is further ordered that Defendant's motion to compel discovery from Hopple and Garden City Group (# 48) is denied as moot.

### ORDER

On January 29, 2010, the Court issued an order finding that the subpoenas served by defendant American International Specialty Lines Insurance Company ("AISLIC") on non-parties E. James Hopple and The Garden City Group, Inc. ("Garden City") imposed an undue burden and that these non-parties should recover at least a portion of their attorneys' fees pursuant to Fed. R.Civ.P. 45(c)(1). The Court directed Mr. Hopple and Garden City to serve and file a statement of their costs and attorney's fees and permitted AISLIC to file an objection to the reasonableness of such fees and expenses. Both the statement of costs, and

AISLIC's memorandum, have now been filed. For the following reasons, the application will be granted to the extent set forth below.

Mr. Hopple and Garden City seek a total of $18,838.75 in attorneys' fees associated with the filing of their motions for protective order and related briefing, preparing for and attending the court hearing regarding these motions, attempting to resolve the dispute relating to their proposed protective order, and responding to AISLIC's subpoenas. Of this amount, $17,266.25 is attributable to the services performed by lawyers in Mr. Hopple's law firm, Schottenstein, Zox & Dunn Co., L.P.A. ("SZD"). The remaining $1,572.50 is claimed by Garden City for services performed by its in-house counsel.

AISLIC opposes the application for attorneys' fees on the grounds that SZD's billing rates, especially those rates charged by the firm's principals, are substantially greater than the prevailing market rates for similar services performed by comparably skilled and experienced counsel in Columbus, Ohio. AISLIC suggests that SZD's rates be reduced to the hourly rates billed by the firm in 2005 while administering the *Booth* class action settlement. Those hourly rates were $350 for Mr. Hopple, $250 for other principals, and $175 for associates. AISLIC also contends that SZD's fees ought to be reduced by 50% across the board for duplication of effort and for excessive time spent drafting the motions for protective order, and that certain entries which it regards as vague, unnecessary, and/or bearing no relation to the motions should be deducted in their entirety. In addition, AISLIC seeks an across-the-board reduction of 50% in the amounts billed by Garden City because, it argues, it is impossible to discern from the entries what work, if any, was performed by in-house counsel on the motions. Finally, AISLIC objects to the failure of Mr. Hopple and Garden City to provide documentation of the hours purportedly spent retrieving and producing emails.

■ "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by

multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551–52 (6th Cir.2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Imwalle*, 515 F.3d at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley, supra.*

The hourly rates charged by SZD attorneys who worked on this matter are: $510 for Mr. Hopple; $440 for Jay Dingledy; $435 for Alan Starkoff; and $225 for Katherine Manghillis. Messrs. Hopple, Dingledy, and Starkoff are all principals of the firm. Ms. Manghillis is an associate. Garden City seeks reimbursement for work performed by Kay Sickles, Associate General Counsel, and Betsy Alaniz, Deputy General Counsel, at an hourly rate of $275, and for work done by Maryann Aiello, Assistant General Counsel, at an hourly rate of $200.

■ Neither side has submitted affidavits regarding what reasonable attorneys of similar skill and experience would charge for legal services in the Columbus market. An attorney's customary client billing rate, however, can be a reliable indicator of the market rate. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 932 (S.D.Ohio 2009) (Beckwith, J.) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir.1995)). The Court has no reason to doubt that the rates charged by SZD represent the normal billing rates for the attorneys involved or that a Columbus restructuring attorney of Mr. Hopple's skill and experience could reasonably charge an hourly rate of $510 in 2009. However, the Court concludes that the services provided in this case, which culminated in the entry of a basic protective order, did not require an attorney of that skill and experience. Ac-

cordingly, the billing rates charged by SZD's principals will be capped at $400 per hour. The Court also finds Ms. Manghillis' hourly rate of $225 in this case to be reasonable.

■ The Court is not persuaded by AISL-IC's argument that SZD's rates should be reduced to those approved in 2005 for administering the *Booth* class-action settlement. Even if those rates were deemed to be the prevailing market rates for attorneys of comparable skill and experience in 2005, the services here were performed in 2009. Judges in the Southern District of Ohio often refer to the 1983 Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure the reasonableness of the attorney fees requested. *See West, supra.* Applying the annual 4% COLA to the rates approved in 2005 for administering the *Booth* class-action settlement, the 2009 hourly rate for Mr. Hopple would have been $410, which is higher than the hourly rate the Court is allowing. The rate for other SZD principals and associates would be somewhat less, but this approach is only a guideline and is not determinative of the ultimate reasonableness of the rate allowed by the Court.

■ The Court likewise is not convinced that the specific entries identified by AISL-IC are duplicative, excessive, vague, unnecessary, or bear no relation to the subpoenas and motions for protective order. The application notes that Mr. Hopple spent an additional 7.50 hours in connection with the subpoena for which he did not charge. Therefore, apart from this voluntary reduction, the Court will not reduce the number of hours billed by SZD. The Court, however, does find that Garden City's in-house attorneys have not documented their services adequately. The entries they submitted do not disclose either the name of the attorney performing the legal services, the dates such services were performed, or the precise nature of such services. Therefore, no fee will be awarded for their services.

The application shows that Messrs. Hopple, Dingledy, and Starkoff billed 9.5 hours, 4.0 hours, and 16.75 hours, respectively. If the hourly rate for their services is capped at $400, the fee request is reduced by $1,875.

Subtracting that amount from the $17,266.25 actually billed results in an allowance of $15,391.25.

 Lastly, the Court considers AISLIC's argument that Mr. Hopple and Garden City failed to account for the time spent retrieving and producing emails. The protective orders entered by the Court provided that Georgia–Pacific and AISLIC would reimburse Mr. Hopple and Garden City for their reasonable costs and fees in performing this service. AISLIC represents that it, in fact, has already paid Garden City $2,500 toward such expenses and that Georgia–Pacific is responsible for payment of another $2,500.

It may be that the absence in the application of significant time spent retrieving and producing emails merely reflects that these services were billed separately. However, Mr. Hopple's time entries show that he spent one hour on June 30, 2009, reviewing SZD's email production and that he spent another hour on July 7, 2009, reviewing "down load of email for document production." AISLIC may be entitled to a further deduction in fees up to $800 if Mr. Hopple has already been reimbursed for this time under the terms of the protective order. The parties should be able to make this deduction, if appropriate, without the need for further judicial intervention.

Based on the foregoing reasons, the Court grants the application of E. James Hopple and The Garden City Group, Inc. for attorneys' fees and expenses in the amount of $15,391.25. AISLIC shall pay this amount, or any lesser agreed-upon sum, by April 30, 2010.