**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOUNT HOPE CHURCH,
       *Plaintiff - Appellant*,

    v.

BASH BACK!,

       *Defendant*,

    and

DKWATT @RISEUP.NET; RISEUP
NETWORKS, Regarding subpoena
directed to Riseup Networks,
       *Objectors - Appellees*.

No. 11-35632

D.C. No.
2:11-cv-00536-
RAJ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted
August 27, 2012–Seattle, Washington

Filed November 26, 2012

Before: Mary M. Schroeder and Ronald M. Gould, Circuit Judges, and Jed. S. Rakoff, Senior District Judge.[*]

Opinion by Judge Gould

---

## SUMMARY[**]

---

### Civil Procedure

The panel reversed the district court's sanction order granting attorneys' fees and costs under Federal Rule of Civil Procedure 45(c)(1).

The order, which followed the quashing of a subpoena seeking identifying information for seven e-mail account holders, found that appellant did not take reasonable steps to avoid imposing an undue burden on appellees, who were non-parties to the underlying case. In reversing the sanctions order, the panel held that Rule 45(c)(1) cannot properly support a sanction where the cost of complying with the subpoena is minimal and there is no showing that the subpoena was facially defective or issued in bad faith.

---

[*] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Brian W. Raum, Dale Schowengerdt (argued), Holly L. Carmichael, Alliance Defense Fund, Scottsdale, Arizona, for Plaintiff-Appellant.

Devin T. Theriot-Orr (argued), Gibbs Houston Pauw, Seattle, Washington, for Objector-Appellee Riseup Networks.

Larry Hildes (argued), Law Office of Lawrence A. Hildes, Bellingham, Washington, for Objector-Appellee DKWatt@Riseup.net.

**OPINION**

GOULD, Circuit Judge:

Mount Hope Church ("Mount Hope" or "the Church") appeals a sanction order granting attorneys' fees and costs to Appellees Riseup Networks ("Riseup") and Objector dkwatt@riseup.net ("dkwatt") under Federal Rule of Civil Procedure 45(c)(1). The order, which followed the quashing of a subpoena seeking identifying information for seven e-mail account holders, found that Mount Hope did not take reasonable steps to avoid imposing an undue burden on Appellees, who were non-parties to the underlying case, when it "shifted its justification for the subpoena multiple times" and "refus[ed] to engage with the applicable [First Amendment] legal standards" in a timely manner. Because there are few published federal court decisions on the meaning of Rule 45(c)(1)'s "undue burden" language as a basis for sanctions, and to place the sanction here in a broader perspective, we write to clarify the scope of that rule.

Holding that Rule 45(c)(1) cannot properly support a sanction where the cost of complying with the subpoena is minimal and there is no showing that the subpoena was facially defective or issued in bad faith, we reverse.

## I

This appeal concerns satellite litigation related to an action filed in the Western District of Michigan.

## A

We start with an explanation of the underlying dispute. In November 2008, a subdivision of the national anarchist group Bash Back!, which has described itself as largely composed of gay, lesbian, transgendered, bisexual, and queer activists, disrupted a Sunday church service at Mount Hope in Lansing, Michigan. During the protest, which attracted about thirty participants, one group clad in black clothes and pink bandanas lined up outside the Church. Another group snuck into the service. While Church security guards were occupied with the protesters outside, the protesters inside initiated action designed to disrupt services in order to highlight the protesters' cause. Some chanted phrases like, "It's OK to be gay" and "Jesus was a homo" while flinging pamphlets, glitter, and condoms into the air. Others unfurled an eighteen-foot Bash Back! banner from the balcony and two women ran to the pulpit and kissed. The record is not entirely illuminating on the explicit motivations of Bash Back! against Mount Hope Church. However, the Church

promoted anti-gay beliefs, and so Bash Back! was retaliating by "bashing back" at the Church.[1]

Thereafter, Mount Hope brought suit in the Western District of Michigan against Bash Back!, Bash Back! Lansing, and fourteen known participants under the federal Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (2006), and common law trespass. Unaware of the identities of many other protest participants, the Church also named several "John Doe" defendants. Mount Hope sought an injunction to prevent Bash Back! and its members from protesting at churches in the future.

## B

We next address the discovery dispute. Mount Hope contends that, during discovery in the underlying case, it made several attempts to glean the identities of the missing defendants. But all defendants apparently refused to name others present and participating at the protest. To get the information, Mount Hope obtained a *subpoena duces tecum* out of the Western District of Washington on February 22, 2011, seeking the names of seven anonymous e-mail account

---

[1] An organization like Bash Back! of course has free speech rights and may advance strong views about sexual freedoms or about how society ought to be organized. *See Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207, 1219 (2011) ("[S]peech cannot be restricted simply because it is upsetting or arouses contempt."). But no group is permitted to violate valid laws in order to "bash" others, trespassing into their lives or harming their persons. *See id.* at 1121 (Breyer, J., concurring) ("[S]uppose that A were physically to assault B, knowing that the assault (being newsworthy) would provide A with an opportunity to transmit to the public his views . . . . The constitutionally protected nature of the end would not shield A's use of unlawful, unprotected means.").

holders from Riseup, a Seattle-based online service provider.[2] Because planning details for the protest were sent to those e-mail accounts, the Church believed that the addresses belonged to missing defendants or, "at the very least, [to people who] knew who was there."[3] The subpoena's cover letter cited the anonymous speech decision in *Doe v. 2themart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001),

---

[2] In addition to the names of the account holders, Mount Hope sought the dates on which each account was created, any billing or payment information (with account information redacted), the IP addresses associated with each account, and all identifying customer information. The Church did not seek any e-mail content. Mount Hope also subpoenaed other online service providers for information about some remaining e-mail addresses. Those providers complied with the subpoenas and provided the information to Mount Hope.

[3] Language from the e-mails sent between Bash Back! leaders and various recipients, whose identities the Church sought, show why the Church could have reasonably believed these individuals participated in the action or knew who did. We thought pertinent the following excerpts:

- "Megabus doesn't go there, and most of us can't spend the time hitching. We should try to get a list going of how many cars are going, and if there is room in any." (e-mail sent on Monday, October 6, 2008).

- "[P]lease at least send one or two representatives from your affinity groups to this convergence." (e-mail sent on Tuesday, October 7, 2008).

- "***Please RSVP with how many you are bringing so that we can work out housing and food." (e-mail sent on Tuesday, October 7, 2008).

- "This is the most planned out action I have been a part of." (e-mail sent on Thursday, November 6, 2008).

and stated that the subpoena was consistent with both that case and "discovery precedent throughout the Ninth Circuit."

Upon receiving the subpoena, Riseup notified the listed e-mail owners and told them that they could hire independent counsel and file a motion to quash. On March 8, 2011, Riseup's counsel sent a letter to Mount Hope objecting to the subpoena as vague, overbroad, unduly burdensome, and contrary to the First Amendment. Mount Hope responded on March 15. To answer Riseup's concern that delivering the subpoenaed information to an address in Scottsdale, Arizona, would be unduly burdensome, the Church's counsel gave a Seattle address. The Church also questioned whether Riseup had standing to raise the First Amendment rights of its users and sought to discuss the matter by phone. Riseup agreed to accept a call. The subsequent conversation did not lead to agreement of the parties, and Mount Hope filed a motion to compel discovery on March 23, 2011.

One e-mail account holder, dkwatt, as well as Riseup, opposed the motion to compel. Dkwatt also moved to quash the subpoena. The district court addressed the two motions jointly. In an order dated April 21, 2011, the district court granted the motion to quash and denied the motion to compel after finding that First Amendment balancing favored

protection.[4]    Thus Bash Back! prevailed in the discovery dispute.

## C

We come now to the sanction at issue on this appeal. After entry of the above-mentioned order, dkwatt and Riseup filed a motion for attorneys' fees and costs under Federal Rule of Civil Procedure 45(c)(1), alleging that they had suffered an undue burden in fighting the "baseless" subpoena. The district court agreed and on July 20, 2011, ordered Mount Hope to pay a total of $28,181.10 in sanctions, $10,637.10 to Riseup and $17,544.00 to dkwatt. The district court based its sanction order on three grounds: (1) that Mount Hope did not provide any non-speculative reason for the subpoena; (2) that Mount Hope shifted justification for the subpoena multiple times over the proceeding; and (3) that Mount Hope "inexplicabl[y]" failed to analyze the relevant case law in a timely fashion. The court did not find that the Church acted in bad faith and noted that the subpoena did not place a logistical burden on Riseup.

---

[4] The district court applied a hybrid approach of the balancing tests in *SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1215–16 (W.D. Wash. 2012) and *2themart.com Inc.*, 140 F. Supp. 2d at 1088. Both cases address discovery of material protected by the First Amendment right of users to anonymously speak or endorse the speech of others on the Internet. The cases are distinguishable in that *SaleHoo Grp., Ltd.* sets forth the standard for unmasking a defendant, 722 F. Supp. 2d at 1215–17, whereas *2themart.com*, 140 F. Supp. 2d at 1095, sets forth the standard for unmasking a witness. Because it was unclear whether the Internet users in this case were defendants or witnesses, or neither, the district court applied a hybrid approach.

Mount Hope then sought and the court approved a *supersedeas* bond for $30,000, resulting in a stayed judgment. A week before the entry of the sanction order, on July 11, 2011, the Western District of Michigan entered a consent order in the underlying case. As part of that settlement, all of the identified defendants in the underlying lawsuit agreed to a permanent injunction preventing them from disrupting religious services anywhere in the United States. The defendants also agreed to pay Mount Hope $2,750 in damages. The federal district court in Michigan entered default judgment against the organizational defendants and closed the case.

## II

We have jurisdiction to review the Washington district court's sanction order under 28 U.S.C. § 1291 because the decision to award attorneys' fees was final and followed the final judgment in the underlying lawsuit. *See Gates v. Rowland*, 39 F.3d 1439, 1450 (9th Cir. 1994) (a fee award for costs related to the monitoring of compliance with a final consent decree is immediately appealable).[5] Although an order imposing sanctions on a party during the course of an ongoing civil action is not normally an appealable order, *Hill v. MacMillan/McGraw-Hill Sch. Co.*, 102 F.3d 422, 424 (9th Cir. 1996), when the sanction order follows the final

---

[5] We do not decide whether an order arising from a discovery proceeding outside of the circuit where the underlying action is still pending is immediately appealable. But we note that several of our sister circuits have held that such orders are immediately appealable because, absent interlocutory appeal, there would be no effective review. *See Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 574 n.5 (2d Cir. 2005) (dealing with the denial of a motion to compel); *see also Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977 (Fed. Cir. 1993) (same).

resolution on the merits and there is no ongoing adversarial proceeding, it is immediately appealable.

We review for abuse of discretion a district court's decision to award monetary sanctions for abuse of the discovery process. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (citing *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996)).[6] Factual findings underlying the imposition of sanctions are reviewed for clear error. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). But we review *de novo* the district court's interpretation of the Federal Rules of Civil Procedure. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1141 (9th Cir. 2003).

---

[6] In *United States v. Hinkson*, we adopted a two-part test for abuse of discretion in the context of denial of a new trial. 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). That test allows reversal (1) if the trial court identified the incorrect legal rule or (2) if the trial court's application of the correct legal standard was illogical, implausible, or without support in inferences that may be drawn from facts in the record. *Id.* Without deciding that *Hinkson* should be applied in this sanctions context, we note that an application of that standard supports reversal. Asking, as *Hinkson* does, whether the district court accurately identified the correct legal standard, we hold that it did not. Our decision today explains the meaning of "undue burden" within Rule 45(c)(1), and applies the district court's findings of fact to it. This satisfies both the *Hinkson* standard, *id.* at 1262, and antecedent formulations of abuse of discretion. *E.g.*, *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007) ("The judgment below must be affirmed unless (1) we have 'a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors,' (2) the district court applied the wrong law, or (3) the district court rested its decision on clearly erroneous findings of fact." (citing *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001)).

## III

We consider whether Rule 45(c)(1) allows subpoenaed parties to recoup expenses incurred while guarding protected information when the subpoenaing party acted in good faith, narrowly tailored its discovery request, but potentially increased litigation costs during motions practice on the protection issue.  Stated another way, we must decide whether losing a motion to compel here based on unpersuasive legal arguments, absent other aggravating factors, is enough to warrant Rule 45(c)(1) sanctions.  This presents an issue of first impression for the Ninth Circuit.[7]

Federal Rule of Civil Procedure 45(c)(1) provides:

> ***Avoiding Undue Burden or Expense; Sanctions.***  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

This rule imposes obligations on both attorneys and courts; attorneys must obey their duty under the rule, and courts must

---

[7] As of publication, *Mattel, Inc.*, 353 F.3d at 813–14, is a leading precedential Ninth Circuit case directly addressing the appropriateness of Rule 45(c)(1) sanctions.  The parties' briefing calls our attention to no Ninth Circuit case that addresses whether a party can recover sanctions under Rule 45(c)(1) when the subpoena was narrowly tailored.

enforce it.  Fed. R. Civ. P. 45(c)(1). When enforcing, courts have discretion over the type and degree of sanction imposed. *Id.*  Payment of opposing counsel's attorneys' fees is one form of permissible sanction.  *Id.*

The plain language of the provision suggests that sanctions may be imposed when a subpoenaing attorney unfairly harms a subpoena recipient by acting carelessly or in bad faith while issuing and serving a subpoena.  *Id.*  The history of Rule 45 provides guidance on how subsection (c)(1) should be interpreted.  Rule 45 was amended in 1991 to bring the protections for subpoenaed parties under the single subdivision of Rule 45(c)(1). 9A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 2463 (3d ed. 2012).  But the advisory committee notes suggest that the amendment did not effect a "change in existing law" and was designed to codify the extant practice, including to give "specific application" to the principles stated in Rule 26(g).  Fed. R. Civ. P. 45(c) advisory committee's note; *see also* Wright, Miller, Kane & Marcus, *supra*, § 2463.

Federal Rule of Civil Procedure 26(g)(1)(B) requires parties seeking discovery to act (1) consistently with the rules of existing law or with good reason to change the law; (2) without bad faith; and (3) reasonably without imposing undue burden or expense considering the needs of the case. Per the terms of Rule 26(g)(3), violation of any one of these duties without substantial justification results in sanctions. Fed. R. Civ. P. 26(g)(3).  Because Rule 45(c)(1) gives "specific application" to Rule 26(g), it follows that a violation of any one of the Rule 26 duties will be relevant to assessing propriety of sanctions under Rule 45(c)(1)'s "undue burden" language.  This approach is consistent with the interpretation

of other courts.[8]  *See, e.g.*, *Builders Ass'n of Greater Chi. v. City of Chi.*, 215 F.R.D. 550, 553–54 (N.D. Ill. 2003).

Appellant Mount Hope urges us to reverse the sanctions award and hold that it did not violate any of its duties in issuing the subpoena.  Appellees, on the other hand, contend that Mount Hope violated nearly all of its duties by subpoenaing arguably protected information and declining to support its request with case law refuting or evidence overcoming First Amendment protection.  The crux for us turns on Rule 45(c)(1)'s scope, an inquiry informed by the traditional role of advocacy in our civil justice system.

The lawyer as advocate plays a key part, along with judges and scholars, in assisting the sound development of the law and of legal rules that further justice.  *Nordyke v. King*, 319 F.3d 1185, 1197 n.10 (9th Cir. 2003) (Gould, J., concurring) ("The law develops through interdependent actions of academics advancing theories, advocates championing them in litigation, and Judges making decisions that clarify doctrine.  The process is ongoing, for after decisions, academics will critique and offer suggested improvements, advocates will bring cases arguing what Judges said as refined by academic feedback, and more refined decisions result from this process." (citing Hon. Wade

---

[8] Some courts have used a similar test to determine whether an undue burden exists, usually in the context of modifying or quashing a subpoena under Rule 45(c)(3)'s identical "undue burden" language. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) (citations omitted). Other courts have analyzed a claimed violation of Rule 45(c)(1) like a claimed violation of Rule 11.  *Dravo Corp. v. Liberty Mut. Ins. Co.*, 160 F.R.D. 123, 128 (D. Neb. 1995); *Mann v. Univ. of Cincinnati*, 152 F.R.D. 119, 126 n.2 (S.D. Ohio 1993).

H. McCree, Jr., *The Annual John Randolph Tucker Lecture, Partners in a Process: The Academy and the Courts*, 37 Wash. & Lee L. Rev. 1041 (1981)).  Advocacy also helps triers of fact reach impartial decisions by allowing them to remain uncommitted while different viewpoints are publicly explored.  *Professional Responsibility: Report of the Joint Conference*, 44 A.B.A.J. 1160–61 (1958); *see also* John T. Noonan, Jr*., The Purposes of Advocacy and the Limits on Confidentiality,* 64 Mich. L. Rev. 1485, 1486–87 (1966).  Through this effect, advocacy promotes justice by preventing decision-makers from deciding issues too quickly—a risk inherent in non-adversary systems—and allowing all parties to be heard.  Noonan, *supra*, at 1487.  Given the importance of advocacy, our adversarial system encourages lawyers to act with zeal for a client's cause.  Model Rules of Prof'l Conduct R. 1.3 cmt. (2011) ("A lawyer must also act . . . with zeal in advocacy upon the client's behalf. . . . [but] [t]he lawyer's duty . . . does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.").  But zeal cannot go unchecked, and many mechanisms, including sanctions, exist to ensure that advocacy supports instead of erodes justice.

Yet, while these mechanisms serve a vital purpose, their overuse may chill an attorney's enthusiasm and creativity, in turn impeding both a tribunal's decision-making process and the creation of new case law.  *See, e.g.*, *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (quoting the Rule 11 advisory committee's note and expressing concern that broad interpretations of Rule 11 would increase "excess litigation" and "would blur the roles of attorneys and finders of fact."); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 408 (1990) (holding that Rule 11 does not authorize a district court to award appellate attorneys' fees due to similar

concerns). For this reason, sanctions should not result from normal advocacy.[9]

With this in mind, we turn to the task of formulating a test for when Rule 45(c)(1) permits sanctions. Appellees urge us to look beyond the face of the subpoena and to read the "undue burden" language in Rule 45(c)(1) as including the burdens associated with guarding protected information. We decline, however, to adopt such a reading. Our only Rule 45(c)(1) sanction-specific case interprets "undue burden" as the burden associated with compliance. *See Mattel, Inc.*, 353 F.3d at 813–14 (holding that a subpoena requesting "all documents" relating to certain people, products, and procedures imposed an undue burden). The Fifth Circuit, which has addressed the issue, agrees. *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (noting that Rule 45(c) provides for sanctions against "one issuing a vexatiously overbroad subpoena" but reversing a sanctions award where the issuing party engaged in "sufficient good faith efforts to negotiate reasonable parameters on the subpoena").

It would not be correct in law to say that there is undue burden every time a subpoena calls for privileged information. For privileges can be waived, *e.g.*, *Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) ("[Plaintiff] fails to recognize that privileges can be waived."), and, even when not waived, there is often a balancing of interests before resolution of a dispute, *e.g.*,

---

[9] It is easy to see why these advocacy-related concerns resulted in Rule 11's curtailment. One need only ask, for example, whether Mount Hope would have been able to pursue successfully Rule 11 sanctions if Riseup had lost its effort to obtain Rule 45(c)(1) sanctions, or can pursue Rule 11 sanctions for Riseup's motion if we reverse. We think not.

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2009) (stating that "we balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure to determine whether the interest in disclosure outweighs the harm" as part of deciding whether to deny a party discovery on First Amendment grounds (internal quotation marks and citations omitted)).

We acknowledge that some courts have indicated a willingness to read Rule 45(c)(1) more broadly. *See, e.g.*, *In re Shubov*, 253 B.R. 540, 544, 547 (B.A.P. 9th Cir. 2000) (suggesting in a case where bad faith was present that "literally everything done in response to [an illegitimate subpoena] constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)"). Yet district courts have routinely rejected this interpretation. *See, e.g.*, *Baily Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672 (N.D. Fla. 2010) (denying sanctions in the form of attorneys' fees where a subpoena was not overly broad); *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) ("[T]he mere fact . . . that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions."); *Scherer v. GE Capital Corp.*, 185 F.R.D. 351, 352 (D. Kan. 1999) (finding that sanctions were not appropriate simply for the expense of filing the motion to quash). Even *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679–80 (N.D. Okla. 2008), a district court case cited by both parties, supports this interpretation. There, the non-party who sought to protect proprietary information by modifying an overly broad subpoena received an award specifically because the incurred costs were the direct result of a "needlessly overbroad and burdensome subpoena." *Id.* at 680.

The advisory committee's notes to another clause of Federal Rule of Civil Procedure 45 also support our reading of "undue burden."   In explaining the same language in section (c)(3)(A)(iv), the advisory committee stated that "it might be an undue burden to compel an adversary to attend trial as a witness if [they] are known to have no personal knowledge of matters in dispute, especially if [they] would be required to incur substantial travel burdens." Fed. R. Civ. P. 45(c)(3)(A)(iv) advisory committee's note.   Under this example, the burdens of complying with the subpoena are the ones that count.   Because the district court found that the subpoena requesting information about seven e-mail addresses was "not a logistical burden or the result of a failure to narrowly tailor requests," the scope of the subpoena did not cause an undue burden.  This finding is supported by the record, which indicates that the Church only requested a limited amount of information that was easily accessible by Riseup.

Given that the "undue burden" language is limited to harms inflicted by complying with the subpoena, it follows that other Rule 26(g) duties, acting consistent with existing law or with good reason to change it and absent bad faith, relate to the subpoena process and not to the adjudication of related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege.

Appellees contend that the subpoena did not comply with existing law because it did not provide any supporting evidence necessary to overcome First Amendment protection. District courts have found that parties fail to comply with existing law when they do not follow the subpoena procedures in Rule 45, *Murphy v. Bd. of Ed.*, 196 F.R.D. 220, 224–25 (W.D.N.Y. 2000) (enforcing Rule 11 sanctions for

failing to notify opposing counsel of subpoenas), and request information that is "wholly irrelevant under any reasonable legal theory," *Builders Ass'n of Greater Chi.*, 215 F.R.D. at 553–54.  But Mount Hope's subpoena was facially valid under Rule 45.  The Church was not required to include evidence refuting First Amendment protection in its request. Because Mount Hope and its counsel could reasonably assert that First Amendment privilege did not invalidate the subpoena, they could issue discovery process based on that reading without fear of sanctions.  The Church also had objective reason to subpoena the information and therefore complied with existing law under 45(c)(1).

Appellees also contend that Mount Hope's position means that a Rule 45(c)(1) sanction requires a finding of bad faith before sanctions may be imposed.  But Mount Hope has not so contended.[10]  Under Rule 26(g), we have held that bad faith is sufficient to invoke Rule 45(c)(1) sanctions.  *See Mattel*, 353 F.3d at 814 (holding that sanctions were appropriate where the subpoena was served for the improper purpose of "exert[ing] pressure on the witnesses not to testify").  But we have never stated that bad faith is necessary, and we do not do so now.  More precisely, bad faith is a sufficient ground for sanction, but it is not a necessary ground if Rule 45(c)(1) is otherwise violated in good faith.  Several district courts have similarly held that bad faith is sufficient but not necessary for Rule 45(c)(1) sanctions.  *See, e.g., Georgia-Pacific, L.L.C. v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 191 (S.D. Ohio 2010) (imposing fees under Rule 45(c)(1) absent a finding of bad faith); *Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20,

---

[10] Mount Hope states in its reply brief that it does not believe that bad faith is necessary for sanctions.

23 (D. Mass. 2000) (same).  We also agree with district court decisions suggesting that Rule 45 places more emphasis on the recipient's burden than on the issuer's motives.  *See Huntair, Inc.*, 254 F.R.D. at 679; *Builders Ass'n of Greater Chi.*, 215 F.R.D. at 553–54.

But because we already held that Mount Hope fulfilled its Rule 45(c)(1) duties to narrowly tailor the subpoena and issue it in compliance with existing law, in the circumstances of this case bad faith would be necessary to uphold the sanction. The district court did not find bad faith and the record shows that none existed.  Mount Hope did not believe the subpoenaed information was protected by the First Amendment and raised legal issues, such as Riseup's potential lack of standing, in its communications with the company.  There is nothing sanctionable in such advocacy, even if it turns out that Mount Hope had a losing legal position.

The subpoena issued in the present action was narrowly tailored and did not at all pose an undue burden on Riseup. To the contrary, what Riseup is complaining about is essentially the advocacy of its opponent, which it says improperly added to its burdens.  But we do not think that the mere need to respond to an opponent's advocacy in our civil justice system should be viewed as unduly burdensome when legal arguments are advanced in good faith.  For our legal system to improve, to respond to current needs and not stagnate in the face of change and new requirements, lawyers should not have their advocacy efforts stifled and chilled.

We do not suggest that Rule 45(c)(1) sanctions are inappropriate where a party subpoenas clearly protected information in bad faith.  We merely hold that bad faith

supporting Rule 45(c)(1) sanctions did not exist here, and that the demands of the subpoena were focused and not unduly burdensome in terms of required production of documents. In the present circumstances, we do not see good grounds for sanctions.

Appellees finally ask that we read Rule 45(c)(1) more broadly when those subpoenaed are not parties to the underlying lawsuit. While we are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them, *see United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party."), we will not read "undue burden" differently just because a non-party was subpoenaed.

## IV

Faced with sharply adverse parties and unclear law, the district judge interpreted Rule 45(c)(1)'s vague "undue burden" language and came to a different result than the one we reach today. But having considered the language, history, and purposes of Rule 45(c)(1), and its placement within the context of our civil justice system, which respects advocacy of lawyers, we hold that absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45(c)(1) sanctions are inappropriate. Sanctions for issuing a subpoena are in no way supported merely because a party advocated a

position in seeking discovery that lost in the end.[11]  The scope of permissible sanctions under Rule 45(c)(1) should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends.   We reverse the sanctions imposed here, which we think would have the effect of chilling valuable advocacy.[12]

**REVERSED.**

---

[11] A fee-shifting provision is distinguishable from a sanction.  *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 52–53 (1991) (distinguishing fee-shifting rules from sanctions by stating that fee-shifting rules "embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees," whereas sanctions are not outcome dependent).   But, even fee-shifting is not necessarily the automatic consequence of loss.  *See, e.g.*, Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West 2012) (permitting fee shifting only where the government fails to prove that its position was not "substantially justified"); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (holding that for a defendant to recoup attorneys fees under § 706(k) of Title VII, a court must find that the plaintiff litigated his or her claim beyond the point where it became "frivolous, unreasonable, or groundless" or where plaintiff acted in bad faith); *but see* Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (2006) (automatically awarding "reasonable" attorneys' fees and expert fees to the prevailing party in some types of civil rights litigation).  Fee-shifting awards frequently use protective mechanisms to guard nonfrivolous advocacy, just as we do today.

[12] Because we reverse the sanction order, we do not address the propriety of the amount of fees awarded.