## UNITED STATES of America, Plaintiff–Appellee,

v.

## Barry D. YAKER, Defendant–Appellant.

No. 02–2405.

United States Court of Appeals, Sixth Circuit.

Feb. 4, 2004.

Ross MacKenzie, David J. Debold, Asst. U.S. Attorneys, Detroit, MI, for Plaintiff–Appellee.

Neil H. Fink, Barry D. Yaker, for Defendant–Appellant.

Before: DAUGHTREY and COLE, Circuit Judges; POLSTER, District Judge.[*]

[*] The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

## ORDER

Barry D. Yaker, proceeding pro se, appeals from his judgment of conviction and sentence. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2000, Yaker pleaded guilty to mail fraud, in violation of 18 U.S.C. § 1341. The district court sentenced Yaker to twenty-one months of imprisonment plus two years of supervised release. Following an evidentiary hearing, the district court ordered Yaker to pay $686,000 in restitution.

Yaker has filed a timely appeal, arguing that: 1) the district court improperly ordered restitution under the Mandatory Victims Restitution Act ("MVRA"); 2) the district court should have ordered restitution under the Victim Witness Protection Act ("VWPA"); 3) the government failed to prove by a preponderance of the evidence that the loss amount was $686,000; 4) there is insufficient evidence to support the district court's determination that Yaker caused a loss of $686,000; and 5) the district court improperly shifted the burden of proof to Yaker to disprove that he owed $686,000 in restitution.

Upon review, we conclude that the district court properly ordered restitution under the MVRA. Contrary to Yaker's claim, the record reflects that he continued his criminal conduct beyond the effective date of the MVRA. As part of his plea agreement, Yaker waived indictment and stipulated "that the factual allegations in count one of the information are true." A review of the information clearly indicates

that Yaker's scheme began in 1992 and continued to "in or about September 1996." The September 1996 allegation was based on "lulling letters" that Yaker had mailed to the investors in an attempt to forestall action by the investors. While some of Yaker's criminal activity predated the effective date of the MVRA, the Act nevertheless applied to Yaker because his criminal conduct continued beyond the effective date of the Act. *Cf. United States v. Hebeka*, 89 F.3d 279, 285 (6th Cir.1996) (application of Sentencing Guidelines to "straddle" crime of food stamp fraud). Hence, the district court did not violate the Ex Post Facto Clause when it ordered restitution under the MVRA.

For these same reasons the district court was not required to order restitution pursuant to the VWPA. Nor was the court required to consider Yaker's ability to pay, because restitution under the MVRA is mandatory. *See* 18 U.S.C. § 2248(b)(4)(A) & (B)(1); 18 U.S.C. § 3664(a) & (f)(1)(A).

■ We also conclude that the district court did not abuse its discretion when it ordered Yaker to pay $686,000 in restitution. The amount of the district court's restitution order is reviewed for an abuse of discretion on appeal. *See United States v. Jackson–Randolph*, 282 F.3d 369, 386 (6th Cir.2002). An abuse of discretion occurs only when the district court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995).

The government established that Yaker was responsible for at least $686,000 in restitution. First, Yaker does not dispute that he collected more than $2,000,000 from investors in relation to an oil drilling project. It is also undisputed that none of the investors received any return on their money. Second, a government witness (Agent Paul Brasmer) testified that Yaker had diverted approximately $914,608 to his personal use, including paying his home mortgage, payments on his cars, payments for his children's tuition, and payments on other personal debts. In converting that much of the funds to his personal use, Yaker virtually guaranteed the failure of the Dead Sea project, causing the investors more than $2,000,000 in loss. However, the $914,608 figure was reduced by approximately $228,889 because this figure represented non-investor funds that had been deposited into the accounts. Agent Brasmer testified that the government's initial investigation into Yaker's expenditures identified approximately $844,386 in legitimate and documented project-related expenses. After meeting with Yaker and his accountant, the government was able to identify another $135,262.92 in legitimate and documented project-related expenses. Yaker was given credit for these expenses against any amount of restitution that might be sought. Yaker was also given credit for cash payments (approximately $112,935) and various office-related expenses (approximately $150,577.78). After subtracting the sums for which Yaker received credit, there was still a balance of approximately $756,840. Hence, the government presented sufficient evidence that Yaker was still responsible for at least $686,000 in restitution, and the district court did not err when it imposed restitution in that amount.

Yaker argues that he is entitled to more offsets because there were additional project-related expenses that the government ignored. The government acknowledged that Yaker had paid out an additional $353,140.95. However, Agent Brasmer testified that these expenses could not be classified as legitimate or non-legitimate expenses. He testified that the purpose for these expenditures could not be con-

firmed because Yaker had not provided any proof or documentation to show the purpose for some of the expenditures, because not all of the expenditures had been recorded in Yaker's books, and because many of the expenditures had been paid to persons or entities who could not be located to confirm the reason for the expenditure. Hence, Yaker was not entitled to credit for these expenses because there is no proof that they were legitimate project-related expenses.

Finally, the district court did not shift the burden of proof to Yaker to prove the amount of loss. In this case, once the government established the amount of loss as $2,000,000 and subtracted legitimate project-related expenses from that amount, the court was not required to assume that the remaining undocumented expenses were also legitimate. The government attempted to determine the purpose of every significant check drawn from the project's bank accounts. The large category of unknown expenses consisted of checks made payable to persons or entities that could not be located and for which there was no explanation in Yaker's available books. Hence, Yaker was afforded the opportunity to establish the legitimacy of these remaining expenses, using whatever documents he might have had in his control.

Accordingly, we affirm the judgment of conviction and sentence. Rule 34(j)(2)(C), Rules of the Sixth Circuit.