NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0219n.06

No. 17-2256

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| In Re: MODERN PLASTICS CORPORATION, | ) ) ) | |
| Debtor. | ) ) ) ) | On Appeal from the United States District Court for the Western District of Michigan |
| _____ | ) ) | |
| NEW PRODUCTS CORPORATION and MARK S. DEMOREST, | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | |
| DICKINSON WRIGHT, PLLC; BANK OF AMERICA, N.A.; EVERGREEN DEVELOPMENT, LLC; and 3 OCIR 337, LLC, | ) ) ) ) ) | |
| Appellees. | ) ) | |
| _____/ | | |

**FILED**

Apr 26, 2018

DEBORAH S. HUNT, Clerk

**Before: GUY, SUTTON, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** In the course of litigating the adversary proceeding brought by New Products Corporation (NPC) against the Chapter 7 Trustee and his surety, NPC's Attorney Mark Demorest served five non-parties with subpoenas *duces tecum* pursuant to Federal Rule of Civil Procedure 45 (Fed. R. Bankr. P. 9016). The ensuing discovery dispute—which included several motions, hearings and orders—resulted in a substantial award of attorney fees and costs to the non-parties, and a subsequent finding of civil contempt for failure to pay that award as ordered. NPC and Demorest appealed, and the district court affirmed

in all respects.  *See New Prods. Corp. v. Dickinson Wright, PLLC (In re Modern Plastics Corp.)*, 577 B.R. 690 (W.D. Mich. 2017).  After consideration of the arguments presented here, we also affirm.[1]

**I.**

NPC's adversary proceeding alleged that the trustee breached his fiduciary duties with respect to one of the Debtor's assets—property on which sat a former manufacturing facility located in Benton Harbor, Michigan (Property).  In the context of that suit, NPC's counsel Mark Demorest served a succession of subpoenas on the following non-parties:  Steven Siravo and Bank of America (collectively BOA) (the Debtor's prepetition lender and NPC's predecessor in interest); Dickinson Wright, PLLC, and two of its attorneys (DW) (BOA's attorneys); and separately Evergreen Development Company, LLC, and 3 OCIR 337, LLC (collectively Harbor Shores Entities) (both of which had been prospective purchasers of the Property and were also clients of DW).   The back-and-forth communications between Demorest and Christina McDonald, an attorney with Dickinson Wright who represented the subpoena recipients (Respondents), were central to the bankruptcy court's determination that the reasonable expenses incurred in complying with the subpoenas should fall on NPC and Demorest under Rule 45(d).

Briefly, the first three subpoenas were served by mail on BOA and DW on August 28, 2014, and each sought the production of documents—including all communications, computer records and emails—in 36 broad categories reaching back to January 1, 2005.  The subpoenas requested a privilege log for any documents withheld on that basis, and commanded production of the documents on or before September 15, 2014.  Upon receipt of the subpoenas on September 4, McDonald emailed Demorest requesting an extension of time to respond, explaining that "it

---

[1]The bankruptcy court's record on appeal appears in the two cases that were consolidated for decision by the district court (Case Nos. 15-cv-1026 (RE 14) and 15-cv-1200 (RE 6)).  All of the filings related to this appeal were made in the bankruptcy adversary proceeding (Bankr. Case No. 13-802512-swd).

will take quite some time and work to determine what might exist in response to the numerous requests." Through several email exchanges on September 5, Demorest suggested that they talk after McDonald reviewed the subpoenas and discuss an extension the following week; while McDonald said there was no need to talk, she wanted to know if he would agree to an extension, and proposed September 26 as a new date for any responses, objections, or motions for protective order. Demorest responded to the last suggestion on September 11, indicating that he could agree to an extension of the time to object until September 23, but that he still expected the production of documents on October 10.

On September 15, McDonald sent timely Responses and Objections to the subpoenas on behalf of BOA and DW. In the accompanying cover letter, McDonald advised, among other things, that there were "very real concerns about the exceedingly broad scope of the requests, the undue burden they place on Respondents, the obvious request for what you must reasonably know to be privileged communications, and the ultimate purpose of your requests." However, McDonald expressed willingness to proceed in good faith "based on the critical assumption that [they would] be able to agree on a stipulated order which addressed the concerns set forth more fully in the Respondents' Objections." That letter also indicated that a stipulated order would need to "address such matters as, without limitation, the proper scope and limits of any production, the ground rules and methods of collection for Electronically Stored Information ('ESI'), protections for privileged and confidential information, *and* the reimbursement of costs." (Emphasis added.) Consistent with those sentiments, the formal Responses and Objections began with objection to the requests as burdensome and a demand to be compensated under Rule 45 "for all costs incurred in copying and producing the requested documents, including but not limited to reasonable attorneys' fees." On September 19, without responding to the objections,

Demorest served 3 OCIR 337, LLC, with a similar subpoena requesting documents in 58 broad categories dating back to January 1, 2005.[2]

Demorest then responded in an email on September 23, inviting a call, demanding production of the documents, and asking to see a draft of a proposed protective order. McDonald's return email (sent that same day) declined the call, confirmed that efforts were underway to respond to the subpoenas, and advised that a draft protective order would be forthcoming. In fact, on October 2, McDonald sent a proposed stipulated protective order with an email that enumerated the specific steps that had been taken to identify and collect potentially responsive material. McDonald stated that they had already identified six boxes of documents and 8,000 emails (not including BOA's emails) and advised that it would take longer to review the email correspondence as much of it would be privileged. Notably, McDonald also invited Demorest to narrow his requests, asking: "If you have further limiting search terms that we might be able to agree upon, or would like to limit the identified Custodians to limit the scope of the potentially responsive Dickinson Wright PLLC material, and thereby potentially speed up the process, please advise and we will consider same. Otherwise, we will proceed as per above."

Demorest did not respond, comment on the proposed order, or suggest any limit to the search then or at a later time. Instead, on October 13, Demorest served the Evergreen Development Company, LLC, with the last subpoena requesting documents in 57 broad categories going back in some cases as far as January 1, 2005.[3] Despite the lack of response to the October 2 letter, McDonald sent Demorest an email update regarding all of the subpoenas on

---

[2]Responses and Objections were sent on behalf of 3 OCIR 337, LLC, on October 10—the first objection being a demand for all costs and expenses incurred, including but not limited to reasonable attorney fees as a non-party under Rule 45.

[3]Evergreen's written Responses and Objections dated October 31 also began with a demand to be compensated for all costs and expenses, including reasonable attorney fees under Rule 45.

October 27. In that update, McDonald advised that BOA's third-party vendor had completed an initial search of the electronic records, and indicated that "nearly 13,000 potentially responsive documents" had been identified that DW would need to review. Significantly, McDonald's email added: "I welcome the opportunity to limit the scope of electronic documents by appropriate search terms or otherwise. As it stands, BOA's review is likely to be quite expensive, and, as you are aware, [NPC] has agreed to reimburse BOA for all costs incurred in connection with this compliance." This update did not prompt any response from Demorest until an email on December 29 asking to set up a phone call.[4]

McDonald responded by email on January 5, 2015, explaining that the production of documents had proceeded, that BOA's third-party vendor had completed its search of the electronic records, and that reviews of documents for confidentiality and privilege were completed. McDonald reiterated that no documents would be produced without a protective order, and advised that the Respondents expected reimbursement of more than $150,000 in costs that had been incurred in responding to the subpoenas. Demorest objected by phone the next day and in a letter that followed on February 2, insisting that the amount was unreasonable, requesting that supporting documentation be provided, and taking the position that the Respondents were not entitled to any reimbursement for expenses incurred prior to the entry of a court order. Not surprisingly, the dispute ended up before the bankruptcy judge.

The Recipients' Motion for Protective Order and NPC's Motion to Compel were fully briefed and heard together on April 16, 2015. After agreements were reached regarding issues of

---

[4]In their Reply Brief, NPC and Demorest argue for reversal based on Respondents' acknowledgement that all communications regarding the subpoenas were deliberately conducted in writing. However, close review of the chart setting forth the chronology shows that this revelation is immaterial. First, the unanswered calls and declined invitations to call were followed by same-day written communication on both September 5 and September 23. Second, nothing in the Reply undermines the bankruptcy court's finding that there was no communication from Demorest between October 2 and December 29 (other than serving Evergreen with the last subpoena).

confidentiality and privilege that are not at issue here, the bankruptcy judge granted the motion for protective order as modified, ordered production of the documents with the issue of costs to be determined later, and denied the motion to compel as moot. The cost-shifting issue was subsequently litigated, including a full evidentiary hearing at which the bankruptcy judge heard testimony from Demorest, a partner from Dickinson Wright, and a representative of the third-party vendor that performed the electronic records searches for BOA.

The bankruptcy court issued its decision on July 23, 2015, setting forth its findings and concluding that NPC and Demorest should bear the burden of the reasonable attorney fees and costs incurred by BOA and the Harbor Shores Entities (Discovery Order). Although that order relied on Rules 26(c) and 37(a)(5) as well as Rule 45, the bankruptcy court clarified on reconsideration that it had shifted expenses to NPC and Demorest "under Rule 45 as a means of enforcing counsel's duty to mitigate the burden of discovery on non-parties" and adhering to the conclusion that the award of "significant and reasonable expenses" incurred as a result of their compliance was consistent with Rule 45(d)(2)(B). *New Prods. Corp. v. Tibble (In re Modern Plastics Corp.)*, 536 B.R. 783, 788, 791 (Bankr. W.D. Mich. 2015).

In determining the amount of the award, the bankruptcy judge independently assessed the reasonableness of the charges and substantially reduced the amount of the attorney fees and costs that would be reimbursed to BOA and the Harbor Shores Entities (from $79,095.98 to $47,488.80 and from $115,857.35 to $61,417.50, respectively). In addition, the bankruptcy court found that the $57,281.20 BOA had paid to its third-party vendor to comply with the subpoena was supported by credible evidence and was reasonable. In all, the bankruptcy court awarded $104,770.00 to BOA and $61,417.50 to the Harbor Shores Entities, specifically directing that those amounts be paid to Dickinson Wright, PLLC, in trust for distribution to its clients. NPC's

motions for reconsideration and a stay were denied on August 26, 2015. *See New Prods.*, 536 B.R. at 791.

When payment was not immediately forthcoming (Demorest proposed a two-year payment plan), a motion for contempt was filed, a hearing and supplemental response followed, and an order finding contempt was entered on November 2, 2015 (Order Finding Contempt). Payment was promptly made as directed, and, after further proceedings, the bankruptcy court ordered payment of an additional $4,725.00 in attorney fees and costs incurred by Respondents in connection with the contempt proceedings (Order Imposing Contempt Award). NPC and Demorest appealed, the district court affirmed, and this appeal followed.

## II.

In this appeal, the bankruptcy court's orders are reviewed directly rather than the intermediate decision of the district court. *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 319 (6th Cir. 2006). We review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Id.* The decision to impose discovery sanctions is reviewed for abuse of discretion. *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 711 (6th Cir. 1999); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997).

### A.   Rule 45(d)

Under Rule 45(d) (formerly 45(c)), there are "two related avenues by which a person subject to a subpoena may be protected from the costs of compliance:  sanctions under Rule 45(d)(1) and cost-shifting under Rule 45(d)(2)(B)(ii)." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). Appellants argue that the award of attorney fees and costs was an abuse of discretion under either provision.

### 1. Sanctions

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Also, on a timely motion, the court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Undue burden is to be assessed in a case-specific manner considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1979)). Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents," and the status of that person as a non-party is a factor. *Id.*

Appellants argue that sanctions may not be imposed under Rule 45(d)(1) absent a finding of bad faith, relying on *Legal Voice*, 738 F.3d at 1185, and *N. Am. Rescue Products, Inc. v. Bound Tree Med. LLC*, No. 08-cv-101, 2009 WL 4110889, at *13 (S.D. Ohio Nov. 19, 2009) ("An element of bad faith is *usually* required." (emphasis added)). But neither case supports a bad-faith requirement. In fact, the passage quoted from *Legal Voice* explained that "failure narrowly to tailor a subpoena may be a ground for sanctions," although the court "need not impose sanctions every time it finds a subpoena overbroad." 738 F.3d at 1185 (citing *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 426 (9th Cir. 2012)). The court in *Legal Voice* affirmed both because plaintiff had not clearly acted in bad faith and because the subpoena was not "so facially overbroad that the district court's denial of sanctions was an abuse of discretion."

*Id*.; *see also Mount Hope Church*, 705 F.3d at 429 (holding that bad faith is sufficient but not necessary to impose sanctions if Rule 45(d)(1) is otherwise violated).[5]

Here, the bankruptcy court specifically found, after undertaking a case-specific inquiry, that the subpoenas issued to the non-parties were unduly burdensome for reasons that included the undisputedly broad scope of the requests in terms of the number of categories, the breadth of each category, and the temporal reach of the requests. Also, as an experienced commercial litigator, Demorest would have known that complying with such subpoenas would involve considerable time and resources, implicate significant concerns about customer privacy for BOA, and require review for privileged communications and attorney work product regarding matters for which DW had been retained. The breadth of the requests was confirmed by credible testimony from BOA's third-party vendor about the work it performed (including searches of all electronically stored information that mentioned, referred to, or related to the Debtor or the Property since January 1, 2005). The bankruptcy court found that much of the expense could have been avoided either initially, or by engaging with Respondents' counsel to address the concerns, tailor the document requests, or comment on the proposed protective order. We agree with the district court that the record supports the bankruptcy court's finding that the subpoenas imposed an undue burden or expense on the non-party Respondents, which Demorest failed to take reasonable steps to avoid. *New Prods.*, 577 B.R. at 705. The bankruptcy court did not abuse its discretion in finding that sanctions were warranted under Rule 45(d)(1).

---

[5]The advisory committee's notes for the 1991 amendment to Rule 45 indicate that this section is intended to give specific application to Fed. R. Civ. P. 26(g), which does not limit sanctions to instances of bad faith or improper purpose.

### 2. Cost-Shifting

Alternatively, Rule 45(d)(2)(B) provides that any person subject to such a subpoena may serve objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served" and that:

If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(d)(2)(B) (formerly 45(c)(2)(B)). Thus, if an objection is made and the court orders the non-party to comply, the court must protect a non-party from significant expenses resulting from compliance. *See United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 534 (C.D. Cal. 2014).[6]

NPC and Demorest argued that any claim for reimbursement under this (or any) provision was forfeited because the Respondents "voluntarily produced the documents when [they] should have simply refused production and waited for [the serving party] to file a motion to compel." *Angell v. Kelly*, 234 F.R.D. 135, 138 (M.D.N.C. 2006). The court in *Angell* concluded that, because the subpoenaed party produced the documents without waiting for a

---

[6]The court in *McGraw-Hill* explained that before the 1991 amendment to Rule 45, courts applied a number of equitable factors to determine whether to exercise discretion to shift the cost of production to the requesting party. 302 F.R.D. at 534-36. Some district courts have continued to consider three equitable factors in making that determination: (1) "whether the putative non-party actually has an interest in the outcome of the case"; (2) "whether it can more readily bear its costs than the requesting party"; and (3) "whether the litigation is of public importance." *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (citing cases). The bankruptcy court did not rely on those factors here, however, agreeing instead with two of our sister circuits that doing so would be inconsistent with the language of the current rule. *See Legal Voice*, 738 F.3d at 1184; *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001); *see also McGraw-Hill*, 302 F.R.D. at 535. The parties have not urged this court to weigh in on the issue, although appellants assert that the Respondents had an unspecified interest in the outcome of the adversary proceeding. However, in the absence of further explanation, we have no reason to doubt the bankruptcy judge's assessment that they did not.

court order, it could not "seek reimbursement post-production based on Rule 45." *Id.* at 139.

This case differs from *Angell*, however, because although the expenses were *incurred* after

objection but before an order was entered, the documents actually were not *produced* until after a

protective order was entered requiring it. Technically, at least, Respondents both objected and

did not voluntarily produce the documents without a court order.

In another case that relied on *Angell*, the district court found that the subpoena recipient

could not seek reimbursement under Rule 45(d)(2)(B)(ii) because the non-party "voluntarily

complied with the subpoena *without conditioning its compliance on reimbursement*." *N. Am.*

*Rescue Prods.*, 2009 WL 4110889, at *14 (emphasis added). In contrast, the Respondents

indicated their intention to seek reimbursement in several ways (objections, email

communication, and a proposed protective order). The bankruptcy court did not err in this case

in concluding that neither *Angell* nor *North American Rescue* would preclude reimbursement in

this case. *See also McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 426-27 (D.N.J. 2004)

(finding non-parties forfeited the right to reimbursement of significant counsel fees where they

did not object to the subpoenas, did not condition compliance on reimbursement, and voluntarily

produced the subpoenaed documents before expressing any concern about the costs of

compliance).

Appellants also contend that recovery under Rule 45(d)(2)(B)(ii) is not available because

one or more of the Respondents' objections was untimely. It is clear that BOA and DW served

their objections timely, although Evergreen's objections may have been one day late and

Respondents concede that 3 OCIR 337's objections were several days late. However, this issue

is deemed forfeited because it was not raised before the bankruptcy court. *See Johnston v.*

*Hazlett (In re Johnston)*, 209 F.3d 611, 612 n.1 (6th Cir. 2000). Moreover, as the district court

recognized, if the issue had been raised, the bankruptcy court would have been able to decide whether to consider the untimely objection. *See Am. Elec. Power*, 191 F.R.D. at 136-37 (considering untimely objections under Rule 45(d)(2)(B)(ii)).

Finally, the bankruptcy court examined the attorney fees and costs sought by the Respondents and disallowed those that Respondents had not shown were reasonable or resulted from their compliance with the subpoenas. NPC and Demorest did not deny that the remaining costs were "significant." The bankruptcy court found that Respondents had not forfeited the ability to pursue cost-shifting because the record showed that they specifically objected to the burden and expense of complying with the subpoenas, communicated concerns about the amount of work and expense that would be required to comply, invited efforts to narrow the search terms and/or custodians subject to the requests, and, ultimately, did not produce the documents until required to do so. Although Rule 45(d) offers more than one mechanism for addressing the difficulties posed by potentially expensive non-party subpoenas *duces tecum*, nothing requires that the costs of such efforts be established before expenses can be incurred. *See* Rule 45 advisory committee's note to 1991 amendment (noting that a court "is not required to fix the costs in advance of production").

**B. Civil Contempt**

NPC and Demorest argue that the order to pay Respondents' attorney fees and costs should have been enforced by writ of execution under Fed. R. Civ. P. 69 ("A money judgment is enforced by a writ of execution, unless the court directs otherwise.") (Fed. R. Bankr. P. 7069). On the contrary, as the district court explained, civil contempt was an appropriate means of enforcing the order to pay discovery sanctions. *New Prods.*, 577 B.R. at 710-11 (citing *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of the contempt

power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.")).  Nor is there any basis for the claim that the bankruptcy court erred by failing to afford NPC and Demorest with an opportunity to "purge" the contempt.  In fact, the bankruptcy court entered an interim order allowing further supplementation in response to the contempt motion.  Rather than purging the contempt, the response was to propose payment to the court rather than to DW as ordered.  The bankruptcy court found the offer did not moot the contempt, and entered a contempt order that provided an opportunity to purge the contempt by making the required payment within seven days.

*            *            *

The district court's order affirming the bankruptcy court's decisions arising out of this discovery dispute are **AFFIRMED.**