NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0506n.06

No. 23-1308

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LISA POSTHUMUS LYONS, Kent County Clerk,

    Petitioner-Appellee,

v.

MY PILLOW, INC.; MICHAEL J. LINDELL,

    Respondents-Appellants.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 06, 2023
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

OPINION

---

BEFORE: WHITE, THAPAR, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Dominion Voting Systems sued Michael Lindell and his company, My Pillow, Inc., for defamation because Lindell claimed that Dominion voting machines helped rig the 2020 election. In search of evidence that could support their defense, Lindell and My Pillow subpoenaed 38 counties across the country for information about the 2020 election, including Kent County, Michigan. In this appeal, Lindell and My Pillow challenge the district court's affirmance of a magistrate judge's order quashing the Kent County subpoena and requiring them to pay Kent County's attorney's fees and costs. Because the district court did not abuse its discretion, we affirm.

**I. Background**

On February 22, 2021, U.S. Dominion Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") sued Michael Lindell and his company, My Pillow, Inc. (collectively, "Lindell"), for defamation and related claims in the United States

District Court for the District of Columbia. Lindell had publicly stated that Dominion machines manipulated the results of the 2020 presidential election by miscounting or changing votes to favor now-President Joe Biden. To defend against Dominion's 1.3-billion-dollar damages action, Lindell hopes to prove that his statements were true, or at least not inherently improbable. For this reason, he has subpoenaed 38 counties across the country that used Dominion equipment in 2020. Kent County is one of them.

Lindell subpoenaed the Kent County Clerk Lisa Posthumus Lyons on September 6, 2022, and set a production date of September 30, 2022. He requested 22 categories of information, ranging from forensic images of "[a]ll drives attached to or affiliated with any device used in conjunction with the election as a communications server or virtual private network server/concentrator" to "[c]opies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election." Subpoena, R. 1-7 at 2, 3. The Clerk wrote to Lindell on September 9 to express the concern that the request "would impose a considerable burden on the elections staff and expense upon the County." Letter, Sept. 9, 2022, R. 1-9. The Clerk asked Lindell to explain by September 13 why the request was relevant to the defamation lawsuit and whether he had made any efforts to "minimize the burden of this production." *Id*. Lindell did not answer.

The Clerk sent a second letter on September 16, this time asking Lindell to withdraw the "unduly burdensome" subpoena by September 19. Letter, Sept. 16, 2022, R. 1-10. The letter warned that the Clerk would move to quash if the subpoena was not withdrawn. On September 21, Lindell replied. He explained that he had subpoenaed other counties, all with a production deadline of September 30, 2022, and "intend[ed] to review . . . the collective responses to all these subpoenas before determining how [he] want[ed] to proceed with respect to each one." Letter,

Sept. 21, 2022, R. 1-11. He said that he would be in touch "in the future" about the County's objections; in the meantime, he would not move to compel compliance with the subpoena. *Id.*

The Clerk moved to quash under Federal Rule of Civil Procedure 45(d)(3)(A)(iv) on October 4, 2022. Among other things, she submitted a declaration from the Kent County Elections Director estimating that it would take approximately 80 hours and more than half a million dollars to gather and review the requested materials. The Elections Director also emphasized that the subpoena demanded sensitive information about Kent County's election equipment that could compromise the security of future elections, including the election taking place the following month in November 2022. Replacing this equipment would cost more than four million dollars.

After a hearing, the magistrate judge both quashed the subpoena and sanctioned Lindell by requiring him to pay Kent County's attorney's fees and costs associated with litigating the subpoena. Lindell appealed the magistrate judge's orders to the district court, which found no error and declined to modify them. This appeal followed.

## II. Analysis

### A. Standard of Review

We review orders quashing subpoenas under Rule 45 for abuse of discretion. *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552 (6th Cir. 2015). Likewise, we review orders imposing Rule 45 sanctions for abuse of discretion. *New Prods. Corp. v. Dickinson Wright, PLLC* (*In re Modern Plastics Corp.*), 890 F.3d 244, 250–51 (6th Cir. 2018).

### B. Order Quashing Subpoena

Federal Rule of Civil Procedure 45 permits litigants to obtain discovery from nonparties via subpoena while simultaneously protecting nonparties from excessively onerous requests for information. To achieve this balance, Rule 45(d)(3)(A)(iv) mandates: "the court for the district

where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." We have instructed district courts to evaluate undue burden in a "case-specific manner" by "considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Modern Plastics Corp.*, 890 F.3d at 251 (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

Applying these factors, the district court was well within its discretion to affirm the magistrate judge's order quashing Lindell's subpoena. For a start, it is difficult to overstate the "breadth of the document request" and the lack of "particularity with which the documents are described." *See id*. Among the more than twenty categories of information requested, the subpoena directs the Clerk to provide "[c]opies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election." Subpoena, R. 1-7 at 3. But consider the enormous volume and variety of documents, reports, and spreadsheets generated in relation to an election. In 2020, this could have included everything from attendance sheets for election-day workers, to flyers listing polling hours and locations, to invoices for masks and hand sanitizer distributed among voters to prevent the spread of COVID-19, to name only a few obvious examples. All these documents come within the unspecific sweep of this subpoena.

The subpoena's astonishing breadth and generality is not confined to this one category of requested information. After all, the subpoena lists twenty-one others. Several of them display similar problems of overbreadth and lack of particularity. For example, the subpoena asks for "[c]opies of all contracts and agreements with the suppliers of any of [Kent County's] electronic election system equipment, devices, software, or support services," and "[c]opies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all

or any part of [Kent County's] electronic election system." *Id.* at 4. The subpoena does not limit "electronic election system" to Dominion machines or other specialized devices that process ballots. Instead, it defines "electronic election system" as "all electronic or computerized devices and equipment used to cast ballots, count votes, tabulate votes, or report results in an election." *Id.* at 1. This encompasses the ordinary computers election workers use to, for instance, transmit vote totals to the relevant state authorities. All the purchase agreements for any Kent County computer that participated in the counting and reporting of votes in the 2020 election fall under the scope of the subpoena. So do all the agreements with the suppliers of software and support services for those computers, and the contracts related to the computers' network security, network monitoring, and cybersecurity. This request would also apply to employment contracts with any IT professionals who respond to these computers' technical issues, and to the terms and conditions associated with the antivirus software installed on these computers. These are just a few examples of the subpoena's massive reach into information irrelevant to the underlying suit. We agree with the district court: "The subpoena could not be written more broadly and is entirely devoid of specificity." Op., R. 38 at 4.

Next, the lengthy "time period covered" by the subpoena also weighs against Lindell. *See In re Modern Plastics Corp.*, 890 F.3d at 251 (quotation omitted). The subpoena does not ask for "contracts and agreements" within a certain date range. Instead, it seeks "all" of these contracts and agreements in various categories, which could easily date back many years. "All" could include the terms and conditions for antivirus software even if Kent County installed it five years before the 2020 election. "All" could include the purchase agreements for the computers even if Kent County ordered them ten years before the 2020 election. "All" could include the employment contracts signed by the IT professionals even if they began working at Kent County twenty years

before the 2020 election. Although the subpoena frames the information it seeks as "related to the results of the November 2020 Election," there is no ceiling on the age of the materials Kent County must unearth to comply. Subpoena, R. 1-7 at 3.

Lindell's subpoena fares no better on the "burden imposed" factor of our undue burden analysis. *See In re Modern Plastics Corp.*, 890 F.3d at 251 (quotation omitted). As the district court notes in its opinion affirming the magistrate judge's order, the Kent County Elections Director estimated that the subpoena requested 2.5 gigabytes of data, or the equivalent of 250,000 emails. Collecting and reviewing this quantity of information would cost $625,000 and approximately 80 hours of employee time. Producing the forensic evidence contemplated by the subpoena would be expensive too. For example, the Elections Director attested that after granting Lindell access to drives affiliated with the election-management system server, Kent County would need to hire a contractor to recertify the software system or else replace it entirely, which would cost $295,000. And to fully address the security issues raised by turning over proprietary information about election equipment to Lindell, Kent County may need to buy new equipment. The district court did not abuse its discretion when it credited the Election Director's testimony explaining the burden imposed by the subpoena.

Even relevance and need, the undue-burden factors that Lindell believes favor him, cannot rescue this subpoena. *See id.* Lindell insists that the subpoena seeks information that "may well be central" to his litigation strategy. Reply Br. at 5. But he can only point to the bare fact that Kent County used Dominion equipment in 2020. He recognizes that there are no known voting irregularities in Kent County indicating that it is an especially valuable place to search for evidence. And even if we accept his argument that *some* of the information requested "may well be" relevant, that material is still dwarfed by the volume of irrelevant information caught in the

subpoena's capacious net. Indeed, the magistrate judge observed that the net was cast so wide, he could not "imagine anything that that net would not capture." Hr'g Tr., R. 25 at 40. The magistrate judge aptly called this "the type of subpoena somebody issues when they have no idea really what they're looking for." *Id.* at 35.

Every factor points in the same direction: this subpoena is unduly burdensome.

Rather than focusing on the Rule 45 factors, Lindell contends that Federal Rule of Civil Procedure 26 furnishes a better set of factors to distinguish an appropriate subpoena from an unduly burdensome one. But Rule 26 concerns discovery in general, and it provides no explicit guidance on subpoenas. In contrast, Rule 45, titled "Subpoena," provides extensive guidance on subpoenas. *See generally* Fed. R. Civ. P. 45. Lindell attempts to circumvent this problem by citing nonbinding, outdated, or decontextualized authority holding that the scope of discovery under Rule 45 and the scope of discovery under Rule 26 are the same. In doing so, he ignores the specific considerations Rule 45's "undue burden" language imposes on a subpoena directed at a nonparty, even though these considerations are clarified in our binding precedent. *In re Modern Plastics Corp.*, 890 F.3d at 251.

Lindell further argues the court should have modified the subpoena, rather than quash it. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (unduly burdensome subpoenas must be either quashed or modified). But Lindell did not ask the magistrate judge to narrow the subpoena, let alone suggest how he should. And Lindell is wrong that a court is required to consider whether a subpoena can be modified before quashing it, especially when, as here, he did not ask the court to tailor the request. He relies on a pair of nonbinding out-of-circuit cases to argue that the magistrate judge had such a duty. The first precedent is inapplicable because the court found the subpoena was not too onerous, and in any event, the court said that a lower court should consider modification "when

appropriate," and the issuer in that case was willing to modify the subpoena. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403–04 (D.C. Cir. 1984). The second citation contradicts Lindell's argument. The footnote he cites states that a "subpoena may be so sweepingly overbroad, however, that it should be quashed in its entirety." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 n.4 (4th Cir. 2019). That is precisely what happened here.

### C. Order Imposing Sanctions

Rule 45 requires the party issuing a subpoena to take "reasonable steps to avoid imposing undue burden" on the recipient. Fed. R. Civ. P. 45(d)(1). Steps taken before and after issuing the subpoena factor into this analysis. *See In re Modern Plastics Corp.*, 890 F.3d at 251. Courts "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). The district court did not abuse its discretion in concluding that Lindell failed to take reasonable steps to avoid unduly burdening Kent County and in sanctioning Lindell with the County's attorney's fees and costs.

Both parties agree that Lindell did not make any effort to avoid burden prior to serving the subpoena, let alone a reasonable one.[1] Although Lindell is right to point out that Rule 45 does not obligate the issuing party to meet and confer about the scope of a subpoena with the recipient prior to serving it, he is wrong to assume that there are no other pre-issuance steps that would have reduced the burden. *See In re Modern Plastics Corp.*, 890 F.3d at 251 (crediting the bankruptcy

---

[1] At the hearing, the magistrate judge asked Lindell's counsel whether Lindell had taken any steps to avoid undue burden prior to serving the subpoena. Lindell's counsel responded, "I'm not sure prior to the subpoena being served, and I don't know even how the caselaw would articulate that prior to something being served. I can only attest to conversations that happened afterwards and the reasonableness of those . . . ." Hr'g Tr., R. 25 at 25. Lindell does not claim that he took any pre-issuance steps in his briefs.

court's finding that "much of the expense could have been avoided . . . initially"). For example, Lindell could have limited his request to documents that contain certain search terms or topics, or to a shorter, more focused time period. But he failed to do so. Quite the opposite, he defended the breadth of the subpoena to the magistrate judge, explaining that he is "seeking information related to the election. . . . [T]hat in itself is a broad term." Hr'g Tr., R. 25 at 35.

Likewise, Lindell did not take reasonable steps after issuing the subpoena. Despite two letters from the Clerk flagging that the subpoena was unduly burdensome—the second of which warned that the Clerk would move to quash if the subpoena was not withdrawn—Lindell did not agree to narrow it. He only kicked the can down the road. Lindell responded by noting that he would "be in further contact in the future regarding Kent County's objections" and informed the Clerk that he did not "intend to bring any motion to compel compliance with the subpoena until [he] ha[d] undertaken further discussion with [the Clerk] regarding the subpoena topics and the objections." Letter, Sept. 21, 2022, R. 1-11. These two sentences are the full extent of Lindell's efforts to avoid imposing an undue burden on Kent County.

Lindell's letter hardly mitigated the burden. In fact, it did not recognize that there was any burden in the first place; the letter merely acknowledged that the County had objections, not that the objections were legitimate or worth addressing. The letter gestured vaguely at "further discussion" but provided no details about that discussion's length, format, time frame, or substance. Lindell pointed out that, depending on the subpoena responses from other counties, he might have decided not to pursue the Kent County subpoena at all, and his letter communicated this possibility to the Clerk. But merely raising the possibility of reducing an undue burden, conditional on some future event that may or may not happen, is not the same as taking reasonable steps to avoid that burden. Lindell could have decided on some unspecified future date that Kent

County's objections were meritless, sent the County a quick email saying so, and moved to compel the next day. The letter was little more than Lindell's pledge to think about the objections at some uncertain point. It was not an attempt to address them.

Nor is there merit to Lindell's claim that the magistrate judge did not have discretion to impose sanctions because Kent County was not actually burdened—after all, he says, the Clerk did not produce any requested materials before moving to quash, so the County did not incur any costs in complying with the subpoena. Lindell notes that the subpoena recipient in *In re Modern Plastics* incurred production costs, but that case provides no support for Lindell's theory because the sanctions order there was not exclusively or even primarily based on those costs. Courts can hold that a subpoena is unduly burdensome without any evidence that the recipient has already shouldered the cost of compliance. *See generally* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. Apr. 2023 update). The alternative would lead to absurdly circular results: a subpoena recipient would have to comply and pay the associated costs to show that the subpoena is unduly burdensome and *then* convince a court to quash it. That would defeat the protections for nonparties embedded in Rule 45.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order.