NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0581n.06

Case No. 25-5276

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Dec 16, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DONALD L. CROSS, JR., | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: NALBANDIAN, DAVIS, and HERMANDORFER, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Donald Cross falsified invoices to draw on his company's line of credit. He pled guilty to bank fraud. The district court sentenced Cross to prison and imposed restitution. Cross served his time, and he's now a free man. But he's still obligated to repay the victim bank. Cross contends that he repaid the bank in full, so he moved to offset his restitution obligation. He also subpoenaed the bank for information on his payments.

The government disagrees with Cross's assessment. It contends that Cross still owes the bank. And it moved to compel Cross to provide his financial information. The district court denied Cross's motion to offset restitution, quashed his subpoena, and granted the government's motion to compel discovery. Cross appealed. But we find his challenges meritless and affirm.

**I.**

Two decades ago, Cross transformed his business into a vehicle for bank fraud. In 2003, he founded Cross Connection Communications, Inc. (CCCI), a contractor in the cable construction

industry. The following year, he obtained a line of credit on behalf of CCCI from Cornerstone Community Bank, which he secured with CCCI's accounts receivable. Cross then devised a scheme to keep the money flowing. In 2006 and 2007, he submitted fraudulent invoices to Cornerstone to draw funds on the company's line of credit.

The law—and Cornerstone—caught up to Cross. He pled guilty to a single count of bank fraud under 18 U.S.C. § 1344. That count concerned only CCCI's line of credit for which Cross had submitted fraudulent invoices, not other loans Cornerstone had given Cross. And Cornerstone then foreclosed on Cross's home and commercial property under a preexisting security agreement. After the foreclosures, the district court sentenced Cross to 51 months in prison, followed by five years of supervised release.

The court also ordered Cross to pay $2.8 million in restitution. The parties had stipulated to that number as the loss amount under both 18 U.S.C. § 3663A and U.S.S.G. § 2B1.1(b)(1). The district court accepted that stipulation.

After Cornerstone had foreclosed on Cross's properties and after the sentencing proceedings, Cornerstone sold the foreclosed properties for considerable amounts. Specifically, Cornerstone sold CCCI's offices for $317,500 and Cross's home for $1,100,000. Cross then petitioned the district court to offset the restitution amount. He sought credit for the proceeds from the sale of these foreclosed properties and for certain payments he had made. On Cross's view, Cornerstone had recovered $2,811,303 already (with the difference between the sales proceeds and the restitution stipulation accounted for by additional payments that Cross says he made to the bank). If accepted as an offset, that amount would've discharged Cross's restitution obligation and left him with eleven grand to spare.

The district court didn't rule on Cross's motion to offset for several years. In the interim, Cornerstone merged with SmartBank. Eventually, the district court found that Cornerstone had received $307,701 from Cross's payments and from liquidating some of Cross's assets. That amount, in addition to being less than the payments Cross had claimed he made, didn't include the sales proceeds from the properties that Cornerstone had foreclosed on.[1] The court issued an amended judgment to reflect an updated restitution amount of $2,492,299. That's what Cross owed to SmartBank, as Cornerstone's successor-in-interest.

Cross wasn't satisfied with the offset. So he subpoenaed SmartBank. He sought to depose a bank representative and obtain documents concerning CCCI's dealings with the bank. He told the district court that he expected to prove that he had satisfied his restitution obligation.

SmartBank and the government didn't sit idly by. SmartBank moved to quash Cross's subpoena, characterizing it as "overly broad and unduly burdensome." R.63, SmartBank's Mot. to Quash, PageID 596. And the government moved to compel Cross to respond to its interrogatories about his assets and financial situation and requests for production of documents.

Cross then filed another motion to offset the restitution amount. He argued—again—that he had discharged his obligation by paying down the loans and by forking over his assets, including the collateralized properties. But this time he claimed that he had actually overpaid, so SmartBank owed *him* $894,124.

The district court ruled against Cross on all three motions. It denied Cross's second motion to offset. It quashed Cross's subpoena to SmartBank as unduly burdensome. And it granted the

---

[1] Suffice it to say that the record is thin on the alleged payments that Cross made to the victim that accounted for the bulk of the money that Cross says Cornerstone recovered. Regardless, if Cross is right about the proceeds offset, he'd still be entitled to a significant offset albeit not the amount he claims.

government's motion to compel post-judgment discovery. On the motion to offset, the court concluded that the parties had considered the value of Cross's collateralized real estate when they stipulated to the original loss amount of $2,800,000. It also noted that while Cross provided bank statements purportedly showing his payments on various loans, he didn't explain what the statements displayed, or the amount of offset he sought based on the purported payments.

This appeal followed.

## II.

Cross raises three issues on appeal. He argues that the district court erred in denying his second restitution offset motion, in quashing his SmartBank subpoena, and in granting the government's motion to compel post-judgment discovery. We address each issue in turn.

## A.

Cross contends that the district court erred in denying his second restitution offset motion because Cornerstone sold his collateralized real estate for a profit. He concedes that the loss amount accounted for the value of those properties at sentencing—when Cornerstone had title to the properties but hadn't sold them yet. But he argues that the district court failed to account for the subsequent sales, so Cornerstone (now SmartBank) over-recovered by earning a profit without a corresponding offset to the loss amount. We disagree. Cross hasn't shown that his real estate secured the loan at issue here. So he isn't entitled to an additional offset on a double-recovery theory.

Once a sentencing court determines the amount of restitution, the defendant bears the burden of proving an offset. *United States v. Sizemore*, 850 F.3d 821, 828 (6th Cir. 2017). That's because the "restitution statute allocates the various burdens of proof among the parties who are best able to satisfy those burdens." *United States v. Elson*, 577 F.3d 713, 734 (6th Cir. 2009)

(citation modified), *abrogated on other grounds by Lagos v. United States*, 584 U.S. 577 (2018). And "the defendant should know the value of any compensation he has already provided to the victim." *Id.* (citation modified). We review the amount of a restitution award for an abuse of discretion. *Id.* at 733.

The Sentencing Guidelines and the Mandatory Victims Restitution Act (MVRA) provide different methods for calculating losses and offsets. Under the Guidelines, sentencing courts reduce loss amounts by "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." U.S.S.G. § 2B1.1 cmt. n.3(D)(ii). Under the MVRA, courts reduce restitution by "the value . . . of any part of the property that is returned." 18 U.S.C. § 3663(b)(1)(B). And when that "property" is money secured by real estate, it's "returned" when the victim sells the property—not when the victim takes title. *Robers v. United States*, 572 U.S. 639, 640–41 (2014).

Why the distinction? Because the Guidelines and the MVRA have different aims. Courts use the Guidelines' loss provisions to calculate sentences. The Guidelines' loss amounts map onto prison terms. *See generally* U.S.S.G. § 2B1.1. But courts use the MVRA to compute the *actual* amount a defendant must pay in restitution. *See United States v. James*, 564 F.3d 1237, 1246–47 (10th Cir. 2009) (distinguishing "loss for the purpose of calculating the defendant's sentence under the Guidelines" from the MVRA calculation of "actual loss"). So it's the MVRA—not the Guidelines—that governs here.

But to offset restitution based on a victim's sale of foreclosed property, a defendant must first link his collateral to the restitution order. He must show that his collateral was "intended to cover the same losses that the restitution order covers." *Sizemore*, 850 F.3d at 829. Otherwise, a

court can't "conclude that the restitution order has the undesirable result of effectuating a double recovery." *Id.* (citation modified).

Cross fails at this threshold step. He hasn't established that his properties secured the line of credit for which he submitted false invoices. That line of credit is just one of Cross's debts, but it's the only one at issue here. Indeed, SmartBank implied the opposite: that Cross's properties secured a *different* loan. It noted that while it "did liquidate [Cross's] collateralized assets and apply those to the loans it had with Cross," it still "has not recovered its restitution ordered for Cross['s] bank fraud related to false accounts receivable." R.92, SmartBank's Resp. to Cross's Reply to its Resp. to Cross's Second Mot. to Offset, PageID 1002. Cross failed to refute this, much less establish that his properties secured the line of credit for which he submitted false invoices. So he failed to carry his burden to establish an offset. *See Sizemore*, 850 F.3d at 829 (no offset when insurer issued "general settlements," but restitution order related to specific funeral and medical expenses and lost wages).

To be sure, the district court didn't exactly follow our approach. It erroneously relied on the Guidelines standard to deny Cross's second motion to offset. It concluded that Cross wasn't entitled to an offset greater than the value of the collateral at sentencing, noting that "the parties would have included the value of collateral when stipulating to a loss amount." R.98, Order, PageID 1033. As we explained, the Guidelines calculation doesn't provide the actual restitution amount. So the court relied on an erroneous legal standard, and that amounts to an abuse of discretion. *See United States v. Yaker*, 87 F. App'x 532, 534 (6th Cir. 2004). By relying on the Guidelines standard, the district court ignored that Cross might have offset his restitution award by (1) providing evidence that Cornerstone made money on its post-foreclosure sales and (2) linking his collateral to the line of credit at issue here.

6

But because Cross didn't provide any evidence linking his collateral to the line of credit, he wouldn't have been entitled to an offset under *any* standard. So the district court's error was harmless. *See United States v. Beverly*, 369 F.3d 516, 540 (6th Cir. 2004) ("[A]n abuse of discretion that does not affect substantial rights is harmless error and is to be disregarded" (quoting *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993)); *see also* Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded.").

**B.**

Cross also challenges the district court's decision to quash his SmartBank subpoena, which we review for an abuse of discretion. *United States v. Theunick*, 651 F.3d 578, 591 (6th Cir. 2011). He contends that SmartBank wasn't a victim. On his view, SmartBank was just a "third party custodian of Cornerstone's records." Appellant Br. at 17. So, he argues, it wasn't unduly burdensome for SmartBank to respond to the subpoena. We disagree. Cross sought irrelevant information from the victim of his fraud. So the district court properly quashed the subpoena.

District courts issue subpoenas for documents upon a showing of relevance, admissibility, and specificity. *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). We've noted that production is appropriate when "documents are evidentiary and relevant," are not "otherwise procurable . . . in advance of trial," the party can't "properly prepare for trial without . . . production," and "the application was made in good faith and is not a fishing expedition." *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990).

But a district court may quash a subpoena if "compliance would be unreasonable or oppressive." *United States v. Llanez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013) (quoting Fed. R. Crim. P. 17(c)(2)). That's because it "must balance the need for discovery against the burden imposed" on the subpoenaed party (or non-party). *In re Mod. Plastics Corp.*, 890 F.3d 244, 251

(6th Cir. 2018) (citation modified). A district court is more likely to find undue burden when a fraud defendant serves a broad subpoena on an alleged victim. *See, e.g.*, *United States v. Minton*, No. 5:17-CR-6-JMH, 2017 WL 1078635, at *3 (E.D. Ky. Mar. 21, 2017) (noting that "imposing the burden of a document production that is akin to a civil discovery production seems particularly unfair" to "alleged victims"); *see also United States v. You*, No. 2:19-CR-14, 2024 WL 2736200, at *4 (E.D. Tenn. May 28, 2024) ("[A]ny arguable relevance is convincingly outweighed by the burden . . . [on] the Victim Companies."). Nor does a bank's successor-in-interest status preclude a district court from quashing a subpoena. *See In re Grand Jury Subpoena*, 688 F. Supp. 319, 319–20 (W.D. Tenn. 1988).

Here, the district court didn't abuse its discretion in granting SmartBank's motion to quash the subpoena. It reasoned that Cross sought information "relating to the liquidation of [his] collateral," which became irrelevant when the court denied his second motion to offset restitution. R.99, Order, PageID 1038. And it noted that "SmartBank currently stands as the victim in this case." *Id*. These are proper considerations. *See Hughes*, 895 F.2d at 1146 (information sought must be "evidentiary and relevant"); *Mod. Plastics*, 890 F.3d at 251 (non-party status relevant to burden); *Minton*, 2017 WL 1078635, at *3 (victim status relevant to burden); *You*, 2024 WL 2736200 (same). Cross hasn't shown that the district court's decision to quash the subpoena "was clearly arbitrary or without support in the record." *Theunick*, 651 F.3d at 591 (citation modified). So we see no reason to disturb that decision.

## C.

Finally, Cross argues that the district court abused its discretion in relying on findings from its order denying restitution offset to grant the government's motion to compel discovery. But Cross cites no legal authority for his proposition that the district court couldn't rely on its

previously entered order.  And common sense and judicial economy suggest that it could.  *See, e.g.*, *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 758 (6th Cir. 2012) (finding it "unnecessary to engage in a lengthy discussion" of race discrimination claims under Tennessee law because the court reversed summary judgment on the Title VII and § 1981 claims), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).  So the district court didn't abuse its discretion in granting the government's motion.

**III.**

For these reasons, we affirm.